510 P.2d 106

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Daniel FRANSUA, Defendant-Appellant.**

**No. 1035.**

Court of Appeals of New Mexico.

May 4, 1973.

Richard C. Losh, Albuquerque, for defendant-appellant.

**174**

David L. Norvell, Atty. Gen., Harvey B. Fruman, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HERNANDEZ, Judge.

Defendant was convicted by a jury on one count of aggravated battery (§ 40A–3–5, N.M.S.A.1953 (2d Repl. Vol. 6)) and sentenced to a prison term of not less than two and not more than ten years. He urges reversal of his conviction on two grounds: (1) that the victim of the battery consented to the act and that such consent frees defendant of criminal liability; and (2) that the trial court committed error by restricting voir dire of a prospective juror on the question of prejudice as to the use of alcohol and denying a challenge to that juror for cause.

We affirm.

On March 3, 1972 both defendant and the victim were in a bar in Albuquerque. Defendant had apparently been drinking heavily that day and the previous day. Sometime around 3:00 p. m. after an argument, defendant made a statement to the victim to the effect that if he (defendant) had a gun, he would shoot the victim. The victim then left the bar, went to his own automobile, removed a loaded pistol from the automobile and returned to the bar. He approached the defendant, laid the pistol on the bar and made the following statement: "I told him (defendant) that there was the gun, that if he wanted to shoot me to go ahead." Defendant then picked up the pistol, put the barrel next to the victim's head and pulled the trigger, wounding him seriously.

Defendant asserts that the actions of the victim in procuring the weapon and inviting the defendant to shoot him constitutes consent to the shooting and as such is a good defense to the crime of aggravated battery. We cannot agree. It is generally conceded that a state enacts criminal statutes making certain violent acts crimes for at least two reasons: One reason is to protect the persons of its citizens; the second, however, is to prevent a breach of the public peace. State v. Seal, 76 N.M. 461, 415 P.2d 845 (1966). While we entertain little sympathy for either the victim's absurd actions or the defendant's equally unjustified act of pulling the trigger, we will not permit the defense of consent to be raised in such cases. Whether or not the victims of crimes have so little regard for their own safety as to request injury, the public has a stronger and overriding interest in preventing and prohibiting acts such as these. We hold that consent is not a defense to the crime of aggravated battery, § 40A–3–5, supra, irrespective of whether the victim invites the act and consents to the battery. See Banovitch v. Commonwealth, 196 Va. 210, 83 S.E.2d 369 (1954), and Martin v. Commonwealth, 184 Va. 1009, 37 S.E.2d 43 (1946).

Defendant interrogated some of the prospective jurors on voir dire as to their feelings on the question of consumption of alcohol, drunkenness, and the defense of intoxication by asking:

"Do any of you have any feeling one way or another concerning people that consume a great amount of alcoholic beverages? Do any of you have any feelings if one is intoxicated and if you are required to find that the defendant had specific intent to inflict bodily harm at the time of the act, and if he were so intoxicated he were not able to form specific intent, would any feelings about over-indulgence have any effect on your findings?"

A juror named Swayze responded with the following statement:

" . . . I feel excessive use of alcohol or drugs or other elements that befuddle the minds of individuals does not release him from his acts; however, I can listen to the evidence and the court's instruction and follow the law."

Juror Swayze when questioned further as to whether he would be prejudiced if intoxication were used as a defense to the requisite intent stated: "Frankly, it [having a prejudice] is possible, but I would

try not to let it." Just after this exchange a juror named Grundy, who had previously been qualified, indicated that "I feel the same way as Mr. Swayze." When asked by defense counsel whether he would be affected or prejudiced against the defendant "if this evidence were offered that he were intoxicated at the time and we are relying on that, in part, as a defense?", Juror Grundy responded with the statement: "I definitely would be prejudiced. I am not saying what way."

The trial court then asked:

> "Just a second, Mr. Grundy. Let me ask you this: The fact that there was evidence of the use of alcohol and you have a particular feeling about the use of alcohol, would the fact that a person used alcohol, and this fact alone, would that so prejudice you against him you could not listen to all the other evidence and reach a fair and impartial verdict?"

To this, Juror Grundy responded with a simple and unequivocal "No." In response to defendant's questions, yet another prospective juror, Jones, made the following statement: "I would like to get back on the alcohol. My feelings would not prejudice me, but if the defense is strictly based on alcohol—" Here he was interrupted by the court with the following statement and questions:

> "Just a second, Mr. Jones. The court, at the proper time, will instruct you what the law of the case is. Do you feel you can follow the instruction of the court, even if you don't agree with what the law is? I am not saying what the law is. We don't know what that will be, but when I instruct the jury as to what the law is, can you follow my instructions?"

Jones answered: "Yes, I can follow the instructions." The trial court then denied a challenge for cause as to jurors Grundy, Swayze and Jones and restricted the defendant from asking Jones and Swayze any further questions on the subject of alcohol. Defendant thereupon used his last two peremptory challenges to excuse Swayze and Jones.

The New Mexico Constitution guarantees a criminal defendant a jury which is "impartial." N.M.Const. Art. II, § 14. In State v. McFall, 67 N.M. 260, 354 P.2d 547 (1960), the Supreme Court defined the term "impartial" as a jury which ". . . is one that does not favor one side more than another, treats all alike, is unbiased, equitable, fair and just." Furthermore, if any one juror sitting on a jury "does not have these qualities, the jury upon which he serves is thereby deprived of its impartiality." State v. McFall, supra.

■ However, this is not to say that to enter the jury box a person must purge his mind of all experiences and opinions. This, of course, is psychologically impossible. All that is required is that they put aside their opinions and enter a verdict based on the evidence presented in court.

> "At the trial, the jurors are expected to make their decision solely on the basis of the evidence properly presented to them. Each juror may of course evaluate this evidence in the light of his own experience. So in a sense, the evidence is weighed in the light of the experience of all twelve jurors. This collective judgment tends to compensate for individual shortcomings and furnishes some assurance of a reliable decision."

Lewis F. Powell, Jr., Jury Trial of Crimes, 23 Washington & Lee Law Rev. 1, 4 (1966).

Our Supreme Court has recognized this and has held that:

> ". . . where a prospective juror states that he has an opinion as to the guilt or innocence of a defendant based upon something he had heard or read, he can nevertheless qualify as a juror *if he asserts that he could and would lay aside any such views, and reach a decision solely on the law and evidence as presented in the trial.*" [Emphasis ours]

State v. Pace, 80 N.M. 364, 456 P.2d 197 (1969).

In State v. Burkett, 30 N.M. 382, 234 P. 681 (1925) a potential juror stated that he had formed an opinion as to the case which would "take some evidence to remove." However, the trial court then inquired further of the juror and after the court's examination the juror "stated, unequivocally, that he could and would set that opinion aside . . . and go into the trial with his mind unprejudiced as between the state and the defendant." In State v. Sims, 51 N.M. 467, 188 P.2d 177 (1947), a juror was held to have been improperly empaneled when, after extensive questioning by the trial court, he continued to maintain that he had a significant bias against the defendant. Furthermore, the juror in State v. Sims, supra, expressed some question not only as to his belief in the guilt or innocence of the defendant but also as to his ability to follow the instructions of the court and the presumption of innocence.

In the instant case, juror Swayze stated that he would be able to ". . . listen to the evidence and the court's instructions and follow the law." Juror Grundy stated that he felt "the same way as Mr. Swayze." When questioned further by the trial court, he answered "no" when asked whether his prejudices against alcohol were so great that he "could not listen to all the other evidence and reach a fair and impartial verdict."

A trial court is vested with broad discretionary powers in supervising the selection of jurors, which includes the power to limit the extent to which parties may go in examination of prospective jurors. Its exercise of this discretion will not be questioned on appeal unless error is manifest. State v. Burrus, 38 N.M. 462, 35 P.2d 285 (1934).

In light of this record and the applicable law just quoted, we are of the opinion that the trial court did not err in denying defendant's challenge for cause of jurors Grundy, Swayze and Jones. We are also of the opinion that the trial court did not err in limiting defendant's questioning in regard to their bias concerning the intoxication of defendant.

Affirmed.

It is so ordered.

SUTIN and LOPEZ, JJ., concur.