THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TONY McCLENDON, Defendant-Appellant.

Fourth District No. 4—85—0672

Opinion filed September 3, 1986.

Daniel D. Yuhas and Allen H. Andrews, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and Patrick T. Curran, all of State's Attorneys Appellate Prosecutor, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

Defendant, together with eight other persons, was charged in the circuit court of Vermilion County with the offenses of mob action and aggravated battery in violation of sections 25—1(c) and 12—4(b)(8) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, pars. 25—1(c), 12—4(b)(8)). Five of the persons so charged entered pleas of guilty. Defendant and two others were tried by a jury. The record does not indicate any disposition as to the ninth person.

The jury returned verdicts finding defendant guilty on both charges and he was sentenced by the trial court to three years' imprisonment for the aggravated battery and one year's imprisonment for mob action, the sentences to run concurrently. One of his codefendants was found not guilty on both charges; as to the other, the verdict was guilty as to mob action but the jury was unable to reach a verdict on aggravated battery.

Defendant has appealed raising five issues: (1) admission of evidence concerning his purported gang membership; (2) refusal of the trial court to permit impeachment of the complaining witness; (3) refusal of the trial court to permit impeachment of a State's witness; (4) excessive sentence; and (5) ineffective assistance of counsel. We find reversible error in the trial court's refusal to allow impeachment of the complaining witness and hence reverse and remand for a new trial. This being so, the other issues become largely moot, but we will comment on them for guidance at retrial.

Since no issue is raised concerning reasonable doubt, we will not indulge in a lengthy recitation of the facts, but a brief recapitulation will be in order so that the issues raised may be more readily comprehended.

The complaining witness, Joe Rapier, testified that as he was walking out of Jimmy Harold's tavern he bumped into Freddie McClendon, a relative of defendant. Herman Strong was standing next to Freddie and told Rapier that he would blow his head off. Rapier and Freddie then started fighting in the tavern. The fight was broken up by bystanders and the two combatants then adjourned to the street where the fight was resumed. Rapier stated that defendant and seven others, naming them, followed him and Freddie out into the street and there attacked him. He claimed that he was knocked down, beaten, and kicked by defendant and the others and that defendant struck him on the head with a bottle. Eventually Rapier was able to escape his attackers.

Other persons present, including the two codefendants, testified as to their versions of the melee. Both of the codefendants maintained that defendant did not fight with Rapier; that it was Freddie and Rapier who were fighting. One witness, who was not charged, testified that she was present and saw defendant swinging at Rapier and that defendant was in the middle of the fight. She estimated the participants in the fight and the bystanders at about 15 to 20 people. Additional facts, as necessary, will be considered in connection with the several issues.

The issue concerning gang membership arose during the direct and cross-examination of Rapier. He stated that he had known all of his attackers for years. The State's Attorney then asked him what they had in common. Over defense objection, he stated that they were all related and "hung around" together. He was next asked if they belonged to any group or organization. Again over objection, he stated that they belonged to a street gang known as the Disciples. He further testified that he had been a member of a different gang, the Vice Lords, for five years.

Rapier further testified that about a week before the fight he had seen defendant making gang signs at a local mall and had heard him tell a companion of Rapier, "I be B.G.D." It was established that the acronym meant Black Gangster Disciples.

On cross-examination Rapier stated that he knew defendant to be a gang member and assumed that the codefendants were also members because they associated with defendant. He further stated that while the fight was going on, defendant talked about the Disciples and

heard gang slogans being shouted. He heard people yelling, "You don't f--- with the Disciples."

Defendant argues that the admission of the testimony concerning gang membership was prejudicial and warrants a new trial. His argument is twofold: (1) that gang membership can be established only through expert testimony, and (2) even if Rapier can be established as an expert, there was insufficient testimony to show that the offenses were gang-related.

■ The rule has been established that proof of gang membership is admissible only if there is sufficient proof to show that such membership is related to the offense charged. Otherwise, it is prejudicial as showing that defendant is a bad person. (*People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658.) Defendant cites *People v. Calderon* (1981), 98 Ill. App. 3d 657, 424 N.E.2d 671, for the establishment of a new rule that gang membership must be proved by expert testimony.

We do not so understand *Calderon*. In that case three occurrence witnesses for the State testified that a group of persons approached them yelling "king love." On cross-examination by the defense, they testified that the term signified the Latin Kings, a gang, but denied being members of another gang, the Imperial Gangsters. In his case in chief, the defendant testified that he knew members of the Latin Kings and the Imperial Gangsters but denied being a member of either. In rebuttal the State called a police officer who had done investigative work in the gang-crimes unit. He testified that based upon his experience and his observation of the defendant in the area of the offense he believed that the defendant was a member of the Latin Kings.

The *Calderon* court pointed out that the issue of gang membership was elicited by the defense and that the expert opinion of the officer was presented in rebuttal only after the defendant himself had denied gang membership. These were two separate issues. In the instant case defendant attempts to combine them into a new rule. We disagree.

■ Expert testimony is required only when the subject being examined is beyond the knowledge and experience of an average juror. (*Perschall v. Metropolitan Life Insurance Co.* (1983), 113 Ill. App. 3d 233, 446 N.E.2d 570.) We cannot conceive that gang membership is so abstruse as to be beyond the ken of a juror. If defendant's theory were pressed to its logical extreme, it would be necessary to call the Chairman of the State Board of Elections to establish that James R. Thompson is Governor of Illinois. The *Calderon* court simply reiter-

ated the familiar rule found in *Hairston* that gang membership was relevant to show common design or purpose. Its other holdings dealt only with the mechanics of proof. The fact that the rebuttal testimony came from an experienced officer was coincidental.

■ Defendant's second argument on this issue, namely, that there was insufficient testimony that the offenses were gang-related, is also without merit. Rapier testified that he heard gang slogans being shouted while he was being beaten by defendant and others; that defendant joined in the shouting; and that he knew defendant to be a member of the Disciples. He also stated that the other defendants, as a group, were either Disciples or associated with the Disciples.

The instant case resembles that found in *People v. Miller* (1981), 101 Ill. App. 3d 1029, 428 N.E.2d 1038. In that case the victim was confronted, beaten, and shot by four individuals. Earlier in the day he had had a minor altercation with one of them and had no reason to expect animosity from the other three. The court found gang membership relevant to explain motive and to explain why all four joined in the beating.

Here Rapier bumped into Freddie McClendon and outside the tavern he was accosted and beaten by several others; charges were filed against nine of them; other than with Freddie there had been no prior confrontations.

No error occurred in the admission of the gang membership testimony.

■ The second issue, that of impeachment of Rapier, is more serious and is determinative of this appeal. Although he was an adult at the time of trial, Rapier had a prior adjudication as a delinquent for armed robbery. The trial court granted the State's motion *in limine* to bar presentation of that adjudication as an attack upon Rapier's credibility. The court based its ruling on Federal Rule of Evidence 609 (Fed. R. Evid. 609), as adopted by our supreme court in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695. Under subparagraph (d) of that rule the court held that the prior adjudication was not necessary for a fair determination of the defendant's guilt or innocence.

In pertinent part Rule 609 states:

" '(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of *nolo contendere*, is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement regardless

of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.

\* \* \*

'(d) Juvenile Adjudications. Evidence of juvenile adjudications is generally not admissible under this rule. The judge may, however, allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the judge is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence. \*\*\*' " (47 Ill. 2d 510, 516-17, 268 N.E.2d 695, 698-99; see 28 U.S.C. App. 703 (1982).)

Although *Montgomery* did not involve the impeachment of a juvenile, the supreme court later interpreted *Montgomery* to have adopted Rule 609 in its entirety, thereby adopting section 609(d). *People v. Ray* (1973), 54 Ill. 2d 377, 297 N.E.2d 168.

Prior to *Montgomery* section 2—9(1) of the Juvenile Court Act (the Act) contained an absolute prohibition against the admission of a juvenile adjudication in any adult proceeding:

"Admissibility of Evidence in Other Proceedings. (1) No adjudication, disposition or evidence given in proceedings under this Act is admissible as evidence against the minor for any purpose whatever in any civil, criminal or other cause or proceeding except in subsequent proceedings under this Act concerning the same minor." (Ill. Rev. Stat. 1971, ch. 37, par. 702—9(1).)

Rule 609(d), as adopted in *Montgomery*, created an exception to the absolute prohibition. *People v. Puente* (1981), 98 Ill. App. 3d 936, 424 N.E.2d 775.

The United States Supreme Court declared the sixth amendment right to confront witnesses included the right to use juvenile court records to impeach a witness for possible bias. (*Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105.) The Illinois Supreme Court similarly allowed the use of juvenile court records in order to show a witness received or was promised lenient treatment from the State in return for his testimony. (*People v. Norwood* (1973), 54 Ill. 2d 253, 296 N.E.2d 852.) Thus, the constitutional right to confront witnesses, including impeachment for possible bias, provided a second exception to section 2—9(1) of the Act.

In an apparent reaction to these authorities, the legislature, in 1982, amended sections 2—9 and 2—10 of the Act. (Ill. Rev. Stat., 1982 Supp., ch. 37, pars. 702—9, 702—10.) Section 2—10 replaced section 2—9 as the statute dealing with the admissibility of juvenile adju-

dications in other proceedings. In pertinent part, it states:

"Admissibility of Evidence and Adjudications in Other Proceedings. (1) Evidence and adjudications in proceedings under this Act shall be admissible: (a) in subsequent proceedings under this Act concerning the same minor; or (b) in criminal proceedings when the court is to determine the amount of bail, fitness of the defendant or in sentencing under the Unified Code of Corrections; or (c) in proceedings under this Act or in criminal proceedings in which anyone who has been adjudicated delinquent under Section 2—2 is to be a witness, and then only for purposes of impeachment and pursuant to the rules of evidence for criminal trials." Ill. Rev. Stat., 1982 Supp., ch. 37, par. 702—10.

In our opinion section 2—10 of the Act has supplanted Rule 609(d) and prior adjudications are now freely admissible for the purposes of impeachment without the balancing test required in Rule 609(d).

■ It is well established that the legislature can enact rules of evidence (*People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137, 461 N.E.2d 410), although it may not enact statutes which infringe on the administrative authority of the supreme court (*People v. Joseph* (1986), 113 Ill. 2d 36).

We find support for our holding in *People v. Triplett* (1985), 108 Ill. 2d 463, 485 N.E.2d 9. In that case the trial court had prohibited the introduction of the juvenile court record of a minor witness because it believed it had the power to do so under Rule 609(d). The supreme court reversed as to certain portions of the minor's record. The court cited section 2—10 of the Act in support of its holding that the witness would be impeached for possible bias by the fact that he was in the custody of the Department of Corrections as a result of an adjudication of delinquency on a burglary charge. The court did not refer to, nor discuss, *Montgomery* or Rule 609(d) in its holdings but based its decision squarely on section 2—10. We believe that the supreme court has accepted section 2—10 as the sole basis for governing admission of juvenile records in other proceedings.

The parties have debated the meaning of the final clause of section 2—10, "pursuant to the rules of evidence for criminal trials." The argument is based on the concept that Rule 609(d) is a rule of evidence and therefore is incorporated into section 2—10 by the final clause. We do not agree. It would be utterly illogical for a statute which purports to repeal a prior rule of evidence to incorporate the same rule which it abolishes. In our opinion the final clause is directed at the manner of proof of a prior conviction or adjudication. (See *Peo-*

*ple v. Gober* (1986), 146 Ill. App. 3d 499.) In addition, the ordinary rules of competency, materiality, and relevancy, plus the timeliness under *Montgomery*, would apply.

The State has argued that *Triplett* was concerned with bias and not impeachment for general credibility. Citing *People v. Harrell* (1983), 112 Ill. App. 3d 241, 445 N.E.2d 496, it maintains that impeachment for bias has a constitutional basis while impeachment for general credibility does not. Suffice it to say, the statute makes no such distinction. Although section 2—10 may undermine the confidentiality of juvenile records, that is the prerogative of the legislature with which we decline to interfere.

■ The case at bar concerns only the impeachment of a witness, not the defendant himself. We offer no opinion as to the applicability of section 2—10, or any possible interplay with Rule 609(d), in the case of a defendant as a witness in his own behalf.

The trial court applied the wrong standard in allowing the motion *in limine* barring Rapier's prior record and we cannot say that this did not affect the outcome of the trial. Rapier was the State's premier witness. Although all witnesses agreed that the melee occurred, a factual dispute was present as to defendant's degree of participation. The failure to allow impeachment of Rapier so prejudiced the case against defendant as to deny him a fair trial.

■ Defendant's third issue concerns the refusal of the trial court to allow impeachment of a State's witness by reason of a felony charge pending against him. Lonnie Smith testified that he drove Rapier to the tavern on the night of the fight but remained outside while Rapier entered the tavern. He saw Rapier leave with a large group of people but could not see what happened next. The crowd disappeared down the street, and he did not see Rapier again that night.

Smith had a felony charge of unlawful use of weapons pending against him, but the trial court ruled that he had not testified on any material issue and denied the use of the charge as impeachment of him. Defendant argues that if he had been able to impeach Smith it would have shown that Rapier associated with bad people and thus damage his credibility. While this may have been one result, it would be an improper use of the impeachment process which is limited only to the believability of the witness being impeached. (See Illinois Pattern Jury Instruction, Criminal, No. 3.12 (2d ed. 1981).) Furthermore, since we have already determined that Rapier may be impeached in retrial, the rationale of the argument must fail.

In any event, we agree with the trial court that Smith's testimony was insignificant and not on any material issue. No error occurred.

■ Defendant next maintains that he received a disparate sentence. As has been indicated above, nine persons were charged as a result of the incident. Five of them pleaded guilty and each was sentenced to probation for terms varying from 1 year to 30 months.

Defendant was tried with two others. One of them was found not guilty on both offenses; the other was found guilty of mob action, but the jury was hung on the aggravated battery charge, and the record reflects no disposition of his case.

Defendant, having been found guilty of both aggravated battery and mob action, was sentenced to three years' imprisonment on the former and one year's imprisonment concurrently on the latter. The sentence range for aggravated battery is two to five years' imprisonment (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(6)). Thus, defendant received one year over the minimum for aggravated battery and the minimum for mob action. The trial court, among other things, commented that the sentences were imposed because of defendant's extensive juvenile record.

Disparate sentences are not *per se* improper. Defendant was the only one of the nine convicted of both offenses and five of the nine entered pleas of guilty. It is proper for a trial court to grant leniency to a defendant who by his plea has insured prompt and certain application of correctional measures, acknowledged his guilt, and showed willingness to assume responsibility for his conduct. (*People v. Sivels* (1975), 60 Ill. 2d 102, 324 N.E.2d 422.) Thus, defendant cannot properly compare his sentence with those imposed on persons who have entered a plea of guilty.

The sentences were within the statutory range, and we find no basis upon which to be critical of them.

Lastly, defendant claims that his trial counsel was ineffective. This grew out of the testimony of a witness called by defense counsel as part of his case in chief. The witness was Nathaniel Small. Defense counsel asked him if he knew a person named "Freddie." He stated that he remembered a "Freddie" and that only "Freddie" and Rapier were fighting. On cross-examination the prosecutor asked him who the man dressed in black was. (It was defendant.) Small stated that he knew that man as "Freddie."

Defendant argues that defense counsel was deficient in calling a witness who testified against his client. This may be generally true and generally indicates that counsel has made inadequate preparation for trial. However, since we have determined that the case must be retried, the error, if any, has become moot and will not reoccur.

In summary, the error in denying the defendant the opportunity

to impeach the State's principal witness is sufficiently prejudicial to require a new trial. The judgment and sentence of the circuit court of Vermilion County is therefore reversed and the cause is remanded to that court for a new trial.

Reversed and remanded.

McCULLOUGH, P.J., and MORTHLAND, J., concur.