THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER RECKERS, Defendant-Appellant.

Fourth District    No. 4—92—0888

Opinion filed October 28, 1993.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Scott H. Walden, State's Attorney, of Quincy (Norbert J. Goetten, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

A jury found defendant, Christopher M. Reckers, guilty of the offense of aggravated battery in violation of section 12—4(b)(8) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 12—4(b)(8)). The circuit court of Adams County sentenced defendant to four years' imprisonment in the Department of Corrections. Defendant appeals, alleging first he was not proved guilty under an accountability theory where he believed he was providing a ride to a consensual fistfight, and second, his sentence was excessive and grossly disparate to that of codefendants. We affirm.

Defendant, Charles Guymon, Timothy Mark Cannon, and Terrell Bell were charged by information with the February 27, 1992, battery and aggravated battery of Terry White in a public park and street of Lima, Illinois. In individual plea agreements Guymon pleaded guilty to aggravated battery and received 30 months' probation, Cannon pleaded guilty to battery and received 12 months' supervision, and Bell pleaded guilty to a previous juvenile petition and charges in this case were dropped.

Witnesses at defendant's trial testified defendant drove a group of high-school-age friends from Quincy to Lima in search of another

group of high school students from Unity High. When the groups met, it was anticipated there would be a fistfight between one or two designated young men from each of the two groups. At least one of the designated fighters from Quincy, Jamie Clark, rode in defendant's truck. Testimony indicated the victim, White, was the designated fighter from Unity, although he denied this.

Defendant's testimony was presented at trial by the State through the use of a transcript of his testimony given at an earlier hearing on a petition to revoke probation. He testified he had gone to the fight not only as a spectator but also to help provide a show of force to either cause the Unity forces to back down or to ensure a fair fight and see that Quincy's designated fighters were not surprised, surrounded or outnumbered.

When the two sides met, Jamie Clark began hitting White while he was still in his vehicle. Guymon, Bell, and Cannon joined the fray and succeeded in pulling White from the car and beating him up. There was no testimony from any source indicating defendant participated in the brawl. One of the spectators left to call the police, and when it was announced they were on their way, the fighters from Quincy piled back into defendant's truck and sped away. When stopped by State Police and sheriff's deputies a short while later, most of the riders had left defendant's truck and he denied knowledge of any fight.

As defendant had no hands-on involvement in the beating of White, the case was tried on a theory of accountability. The jury was instructed defendant could be found guilty of aggravated battery if he "aids, abets, agrees or attempts to aid" others in the planning or commission of an offense. (Ill. Rev. Stat. 1991, ch. 38, par. 5—2(c).) Despite defendant's argument that at most he was only aiding in the facilitation of a fistfight by driving one of the combatants there while he himself just went to watch, the jury returned a verdict of guilty.

■■ Defendant argues on appeal he cannot be found guilty of aggravated battery beyond a reasonable doubt where a consensual fight was anticipated by those involved. Consent as a defense to battery appears to be a novel idea in Illinois and while some of the evidence in the case might be interpreted as showing the victim consented to engage in a fistfight, defendant did not pursue this theory by a tendered jury instruction or argument. This was not defendant's theory of the case before the trial court, and we decline to consider whether the victim's purported consent would be a defense to battery. We note, however, any consent the victim may have given here would presumably have been to a fistfight between equal numbers and not to a

pummeling by three of defendant's friends. Additionally, we are inclined to agree with the commentators and a number of our sister States who found consent not to be a defense to a battery based on injurious touching. See 2 W. LaFave & A. Scott, Substantive Criminal Law ch. 7, §7.15(e), at 311 (1986); *Jaske v. State* (Ind. 1989), 539 N.E.2d 14; *People v. Lucky* (1988), 45 Cal. 3d 259, 753 P.2d 1052, 247 Cal. Rptr. 1; *State v. Richards* (1985), 123 Wis. 2d 1, 365 N.W.2d 7; *State v. Hatfield* (1984), 218 Neb. 470, 356 N.W.2d 872; *Commonwealth v. Burke* (1983), 390 Mass. 480, 457 N.E.2d 622; *Lyons v. State* (Fla. 1983), 437 So. 2d 711; *State v. Fransua* (1973), 85 N.M. 173, 510 P.2d 106.

■ Defendant argues he should not be found guilty under the accountability statute (Ill. Rev. Stat. 1991, ch. 38, par. 5—2(c)) because the evidence failed to prove beyond a reasonable doubt he intended to facilitate the beating of White in a nonconsensual and unfair fight. The statute incorporates the "common design rule," which provides whenever two or more people engage in a common criminal design, any acts in furtherance thereof committed by one party are considered to be the acts of all parties to the common design and all parties are accountable for those acts. (*People v. Terry* (1984), 99 Ill. 2d 508, 460 N.E.2d 746.) While it is true criminal responsibility may not be imposed by the defendant's mere presence at the scene (*People v. Bolar* (1992), 229 Ill. App. 3d 560, 593 N.E.2d 156), here defendant was more than a mere spectator.

Defendant was aware of the criminal design, *i.e.,* to go to Lima so Jamie Clark could fight Terry White. He helped facilitate the offense by voluntarily driving Clark and the other attackers to the park in Lima where the fight was to take place. The design involved illegal acts that were dangerous in nature. Defendant was acting as a lookout for Clark and intended to join the fight if necessary. He did nothing to disapprove or oppose the fight, but rather stood by and watched as the three youths beat White and dragged him from a car. He fled when told the police were coming, taking several of the group with him. When stopped by a police officer, he failed to report the fight and instead denied he was involved. He maintained close affiliation with his companions after the offense.

Active participation has never been a requirement for criminal guilt on the theory of accountability. (*People v. Ruiz* (1982), 94 Ill. 2d 245, 447 N.E.2d 148.) Proof of the common design need not be supported by words of agreement but can be drawn from the circumstances surrounding the commission of an act by a group, and the circumstances may show there is a common design to do an unlawful act

to which all assent. (*People v. Tate* (1976), 63 Ill. 2d 105, 345 N.E.2d 480; *People v. Richardson* (1965), 32 Ill. 2d 472, 207 N.E.2d 478.) Evidence that a defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design supports an inference he shared the common purpose and will sustain his conviction as a principal for a crime committed by another in furtherance of the venture. (*People v. Rybka* (1959), 16 Ill. 2d 394, 158 N.E.2d 17.) When the defendant voluntarily associates with a group bent on illegal acts that are dangerous in nature, or which will probably or necessarily involve the use of force and violence, he becomes accountable for any wrongdoings of the other members of the group in furtherance of a common purpose even though he did not actively participate in the overt act itself. (*Rybka*, 16 Ill. 2d at 407, 158 N.E.2d at 22.) If the proof shows he was present at the commission of the crime without disapproving or opposing it, the trier of fact may consider this conduct in connection with other circumstances and thereby reach a conclusion he assented to the commission of the crime, lent to it his countenance and approval, and was thereby aiding and abetting it. (*Richardson*, 32 Ill. 2d at 477, 207 N.E.2d at 481.) Proof the defendant was present during the perpetration of the offense, fled from the scene, maintained a close affiliation with his companions after the commission of the crime, and failed to report the crime are all factors the jury may consider in determining accountability. *People v. Reid* (1990), 136 Ill. 2d 27, 62, 554 N.E.2d 174, 190.

■ We find there was sufficient evidence to find defendant guilty beyond a reasonable doubt and turn now to defendant's arguments regarding sentencing. Defendant maintains his four-year sentence was excessive because he had a minimal prior criminal record and his codefendants, who were the actual physical perpetrators of the aggravated battery, received only probation. Consequently, defendant has asked this court to reduce his sentence to two years. While we acknowledge our authority to reduce defendant's sentence (134 Ill. 2d R. 615(b)(4)), we decline to do so here.

Defendant's sentence was within statutory limits. He was convicted of aggravated battery, a Class 3 felony (Ill. Rev. Stat. 1991, ch. 38, par. 12—4(e)) carrying a possible sentence of between two and five years' imprisonment (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(6)). A sentence within statutory limits will not be overturned absent an abuse of discretion. *People v. Lucas* (1991), 215 Ill. App. 3d 148, 574 N.E.2d 850.

There was no abuse of discretion. In deciding the appropriate sentence, the trial court is to consider such factors as the defendant's

general moral character, credibility, demeanor, social habits, and age. (*People v. Streit* (1991), 142 Ill. 2d 13, 566 N.E.2d 1351.) A trial court's ruling is entitled to great deference because it is better able to make a firsthand, reasoned judgment based on these factors. *People v. Anders* (1992), 228 Ill. App. 3d 456, 592 N.E.2d 652.

A review of the presentence investigation report reveals an abysmal rehabilitative potential on defendant's part. The opening paragraph of the first supplemental report indicates the report was not complete because defendant refused to be interviewed. Defendant had previously been sentenced to 30 months' probation for possession of a stolen vehicle, a Class 2 felony (Ill. Rev. Stat. 1991, ch. 95½, pars. 4—103(a)(1), (b)). Defendant was on that probation when he committed the instant offense. He was dismissed from a general equivalency degree program for failure to attend classes. He missed appointments at Recovery Resources and was dropped from that program. Defendant tested positive for cannabis usage in February 1992. Defendant had a substance-abuse problem. His adult record included convictions for underage possession of alcohol and interfering with a police officer. Both charges came while defendant was on juvenile probation for misdemeanor theft. His juvenile record included probation in Nebraska in 1986 for second degree criminal trespass and criminal mischief. Between his conviction for the instant cause and sentencing, defendant moved to Dallas, Texas, where he was promptly arrested and fined $150 for public intoxication.

Defendant's criminal history alone would support the sentence. At only 19 years of age, defendant had committed offenses in at least three different States. From the record it appears there was rarely, if ever, a time in defendant's adolescent and adult life when he was not in some kind of trouble with the law. After having been given numerous chances through probation to prove his ability to live peacefully in the community, defendant showed himself to be incapable of doing so.

Considered on its own, defendant's sentence was appropriate. In comparison with his codefendants, defendant's sentence was also appropriate. Disparate sentences are not *per se* improper. (*People v. McClendon* (1986), 146 Ill. App. 3d 1004, 497 N.E.2d 849.) Disparity in sentences may be justified by the relative character and history of the codefendants, degree of culpability, rehabilitative potential or criminal record. *People v. Foster* (1990), 199 Ill. App. 3d 372, 556 N.E.2d 1289.

Comparison with two of the codefendants is not legitimate. Mark Cannon pleaded guilty to simple battery, a misdemeanor. Thus, he was

not eligible to receive any prison sentence. Terrell Bell admitted to a juvenile petition and the charges were later dismissed.

Comparison with Charles Guymon reveals he had no adult arrest record and his juvenile record consisted of a $50 fine for fighting, several curfew violations, and unlawful restraint and battery. Guymon's record was much less serious than defendant's.

It should also be noted the codefendants pleaded guilty, rather than going to trial as defendant did. It is proper for the trial court to grant leniency toward a defendant who by his plea of guilty has insured prompt and certain application of correctional measures, acknowledged his guilt, and shown willingness to assume responsibility for his misconduct, while giving a higher sentence to one who has stood trial. (*People v. Sivels* (1975), 60 Ill. 2d 102, 324 N.E.2d 422.) Thus, a defendant who has stood trial cannot properly compare his sentence with those imposed on persons who have pleaded guilty. (*McClendon*, 146 Ill. App. 3d at 1013, 497 N.E.2d at 855.) This is especially true where, as was the case with Guymon, a codefendant has pleaded guilty and helped prosecute the defendant. *People v. Coustin* (1988), 174 Ill. App. 3d 824, 529 N.E.2d 89.

The judgment of the trial court is affirmed.

Affirmed.

McCULLOUGH and COOK, JJ., concur.