# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CT-00488-SCT

*DESMOND DURR*

*v.*

*STATE OF MISSISSIPPI*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 04/06/95 |
| TRIAL JUDGE: | HON. BETTY W. SANDERS |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WARREN L. CONWAY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | FRANK CARLTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 9/17/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/8/98 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

### I.

¶1. Desmond Durr was convicted of manslaughter in the Circuit Court of Sunflower County in February of 1995 for killing a fellow inmate while incarcerated in the state penitentiary located at Parchman, Mississippi. On November 21, 1997, his conviction and sentence were affirmed by the Mississippi Court of Appeals. We granted certiorari to address whether a victim's consent to severe physical contact may be used by a criminal defendant as a viable defense. We affirm both the trial and appellate courts. Such a defense is unavailable in Mississippi.

### II.

¶2. Desmond Durr and Jerry Larry were both incarcerated at the Mississippi State Penitentiary in November of 1995. Durr was a member of the fraternal order, Black Gangster Disciples. Larry

sought membership. Durr held the position of "zone enforcer" for the brotherhood, which entitled him to administer "love licks" to all prospective candidates for membership.

¶3. The typical candidate for membership receives thirty six violent blows to the right side of the chest. For unknown reasons, an exception was made for Larry who only received twelve hard strikes directly over his heart. These blows caused cardiac failure, eventually leading to Larry's death. Durr was subsequently indicted and tried for murder, but was convicted of the lesser offense of manslaughter.

### III.

¶4. Durr argues that the circuit court improperly refused Instruction D-11, which stated:

> The Court instructs the Jury that the killing of any human being by the act, procurement, or omission of another shall be excusable when committed by accident and misfortune in doing any lawful act by lawful means, with usual ordinary caution, and without any unlawful intent.

> If you find that Jerry Larry died at the hands of the defendant, Desmond Durr, and that Jerry Larry's death was the result of an accident and/or misfortune in doing a lawful act by lawful means with usual ordinary caution and without any unlawful intent then you must find the Defendant, Desmond Durr, not guilty.

¶5. Durr argued at trial that he had no intent to injure Larry, and that Larry consented to the ritualistic beating as a part of the gang initiation. The State responded that Durr's consent to being struck is irrelevant in a trial for simple assault under Section 97-3-7(1) of the Mississippi Code, and thus, the manslaughter conviction predicated upon the same unlawful act must stand. The State is correct.

¶6. Other jurisdictions have enounced certain rules which support our analysis. Consent has been found to be a valid defense when the touching does not exceed the scope of consent and does not violate an established rule, such as in athletic events. It may also be a viable defense when the person being touched was made aware of the risks prior to consent, and in professions and "occupations involving invasions of one's physical integrity." *Helton v. State*, 624 N.E.2d 499, 514 (Ind.Ct.App. 1993).

¶7. The facts of this case fail, however, to establish consent. The present facts are similar to the Ohio case of *State v. Brown*, 630 N.E.2d 397 (Ohio Ct.App. 1993). In *Brown*, an assault conviction resulting from sorority initiation by paddling was affirmed. The recipients of the paddling were not found to have consented to the degree of "discipline" administered. Though *Brown* is instructive, the Indiana case of *Jaske v. State*, 539 N.E.2d 14 (Ind. 1989) is directly on point. Jaske was a reformatory inmate who beat another inmate to death during a prison initiation. Jaske appealed his conviction of involuntary manslaughter, raising the victim's consent as a defense. In affirming, the Indiana Supreme Court adopted the reasoning of the New Mexico Court of Appeals in *State v. Fransua*, 510 P.2d 106, 107 (N.M.Ct.App. 1973), a similar case in which one man invited another to shoot him:

> Defendant asserts that the actions of the victim in procuring the weapon and inviting the

defendant to shoot him constitutes consent to the shooting and as such is a good defense to the crime of aggravated battery. We cannot agree. It is generally conceded that a state enacts criminal statutes making certain violent acts crimes for at least two reasons: One reason is to protect the persons of its citizens; the second, however, is to prevent a breach of the public peace. *State v. Seal*, 76 N.M. 461, 415 P.2d 845 (1966). While we entertain little sympathy for either the victim's absurd actions or the defendant's equally unjustified act of pulling the trigger, we will not permit the defense of consent to be raised in such cases. Whether or not the victims of crimes have so little regard for their own safety as to request injury, the public has a stronger and overriding interest in preventing and prohibiting acts such as these. We hold that consent is not a defense to the crime of aggravated battery, § 40A-3-5, supra, irrespective of whether the victim invites the act and consents to the battery.

¶8. We endorse the view of our brethren in New Mexico, and adopt the logic of **Fransua**. Accordingly, we hold that the victim's consent to being struck was not relevant to this case. Durr's actions amounted to a reckless infliction of bodily injury, and thus, did not constitute a "lawful act [committed] by lawful means ... without any unlawful intent."

¶9. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS AND SMITH, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, J.**

### McRAE, JUSTICE, DISSENTING:

¶10. Unlike the majority, I am not persuaded by the State's argument that Larry's consent to the blows which ultimately killed him is irrelevant to the charges against Durr. Rather, Instruction D-11 should have been granted and the case should be reversed and remanded for a new trial. Accordingly, I dissent.

¶11. Instruction D-11, which was refused by the circuit court, states:

The Court instructs the Jury that the killing of any human being by the act, procurement, or omission of another shall be excusable when committed by accident and misfortune in doing any lawful act by lawful means, with usual ordinary caution, and without any unlawful intent.

If you find that Jerry Larry died at the hands of the defendant, Desmond Durr, and that Jerry Larry's death was the result of an accident and/or misfortune in doing a lawful act by lawful means with usual ordinary caution and without any unlawful intent then you must find the Defendant, Desmond Durr, not guilty.

Durr's defense throughout was that Larry's death was an accident, that Durr obviously had no intent to injure him, much less kill him, and that Larry consented to being struck.

¶12. The Court of Appeals found that Durr was not committing a "lawful act by lawful means . . . without any unlawful intent" and that the instruction was properly refused. This Court has found that "[n]o criminal responsibility attaches to a slaying which is the result of accident or misadventure in the true sense of those terms." *King v. State*, 254 Miss. 162, 181 So. 2d 158 (1965). In *King*, the defendant accidentally dropped a pistol which discharged and killed the victim.

¶13. The facts of this case are distinguishable from *Jaske v. State*, 539 N.E. 2d 14 (Ind. 1989)„upon which the majority relies. It appears that the initiation beating in *Jaske,* which included striking the initiate in the stomach until he lost consciousness, was far more intentionally brutal than what occurred here. The record indicates that the ritual involved hitting the initiate with a fist twelve times in the right chest area. At Durr's trial, his attorney had at least four inmate witnesses, including Durr, each hit him in the presence of the jury with twelve blows comparable to those Larry allegedly received. Further, as explained in *Helton v. State*, 624 N.E. 2d 499, 514 (Ind. Ct. App. 1993), where a gang member was charged with participating in criminal gang activity in connection with the "initiation prayer," consisting of forty blows to the head and six to the chest, used on new members, it is apparent that in Indiana, unlike in Mississippi, specific statutes govern both gang activity and hazing. The *Helton* court noted the exceptions to the rule adopted in *Jaske*, such as athletic events where the touching does not exceed the scope of consent, does not violate an established rule, and where the person being touched was made aware of the risks prior to consent, and professions and "occupations involving invasions of one's physical integrity." *See also* *State v. Brown*, 630 N.E. 2d 397 (Ohio Ct. App. 1993)(conviction of complicity to assault resulting from sorority initiation paddling affirmed where those injured did not consent to degree of "discipline" administered). Such parameters, however, are meaningless in a game like basketball or soccer, where the rules forbid physical contact between players. Is this to say that any injury arising from a foul amounts to a non-consensual battery? One would hope not.

¶14. I would find that in this case, a factual issue existed as to whether Durr killed by accident, whether he was doing a lawful act by lawful means, with usual ordinary caution, and without any unlawful intent. Thus, the refusal of Instruction D-11 amounts to reversible error. The case should be reversed and remanded for further proceedings.

**WALLER, J., JOINS THIS OPINION**.