**Karl Dayton WOODS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 11–CF–1146.

District of Columbia Court of Appeals.

Argued Nov. 1, 2012.

Decided May 9, 2013.

Sarah A. Stockwell for appellant.

David Rybicki, Assistant United States Attorney, for appellee. Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, Chrisellen R. Kolb, Lara W. Worm, and James A. Petkun, Assistant United States Attorneys, were on the brief for appellee.

Before OBERLY, BECKWITH, and EASTERLY, Associate Judges.

OBERLY, Associate Judge:

 After a jury trial, Karl Dayton Woods, appellant, was convicted of simple assault in violation of D.C.Code § 22–404(a)(1) (Supp.2007) and assault with significant bodily injury in violation of D.C.Code § 22–404(a)(2). On appeal, Woods alleges that the trial court committed reversible error by rejecting his request for a jury instruction on the affirmative defense of consent. Finding no error, we affirm.

## I. Background

On March 14, 2010, Woods and Donald Shelton were both hanging out in the vicinity of Union Station. At some point in the evening, a limousine pulled up and a man handed Shelton a case of beer. Because he does not drink beer, Shelton went to a nearby spot where other people were hanging out and passed out the beers. Woods asked for a beer, but Shelton told him "no" and testified that Woods took two beers anyway. An altercation ensued between Woods and Shelton and, according to Shelton, Woods became "really upset," and began "yelling" and "swinging his hands"; in response, Shelton cursed at Woods. Nicole Tosner, a server at Capitol City Brewing Company, located across the street from Union Station, saw the alterca-

tion while taking a cigarette break. She testified that Shelton was "in [Woods's] face" and "had his hands up in the air saying hit me, hit me, fucking hit me" while the two men were "stepping closer, further away, closer, [and] further away to each other." That continued for "five to 10 minutes" and then Tosner "heard a crack." She did not see what happened, but ran over to the area where the men were arguing and saw Shelton "[ly]ing on the ground unconscious."

Sergeant Kevin Dauphin with the Amtrak Police Department was nearby on a routine patrol and heard Shelton's head hit the ground and went over to see what had happened. When he got there Tosner "pointed in the direction of [Woods]," who was walking away. Officer Dauphin stopped Woods and asked him "what happened," to which Woods replied, "I knocked the mother fucker out and I smacked the shit out of his ass." Officer Dauphin arrested Woods. Shortly thereafter, Amtrak Police Officer Taniqueka Harvey arrived and observed that Shelton was "not moving" and his face was "bloody." After Officer Dauphin tried for about two minutes to revive Shelton, Shelton awoke but then suffered what is believed to have been a seizure. According to medical records, Shelton had "swelling on his face and some cuts on his face." One or two days after the incident, Officer Dauphin interviewed William Angelo, a friend of Shelton, who witnessed the incident. According to Officer Dauphin, Angelo said that Woods and Shelton were "horse playing and all of a sudden Mr. Wood[s] just snapped and hit [Shelton] really hard in the face."

On July 20, 2010, appellant was charged with aggravated assault (Count One), in violation of D.C.Code § 22–404.01 (2001), and assault with significant bodily injury (Count Two). At trial, the defense requested that the jury be instructed that consent was a defense to assault. The trial judge denied the request, stating that "the great weight of authority ... disfavors the defense of consent in assault cases" and that she did not find "any cases where the Court was reversed for not giving a consent instruction under circumstances like this, so it seems ... that as a matter of law, consent is not a defense to an assault." Further, in light of the fact that the jury "heard that [Shelton] said, 'Go ahead, hit me, hit me,' " the trial court, over defense counsel's objection, instructed the jury as follows: "Consent is not a defense. A complaining witness's consent is not a legally recognized defense to a charge of assault." The jury found Woods guilty of the lesser-included offense of simple assault on Count One and guilty on Count Two.

## II. Analysis

■ Appellant contends that the "trial court was required to instruct on the defense of consent and failure to do so violated [his] federal "constitutional rights." In determining whether a defense instruction was properly denied, we review the evidence in the light most favorable to the defendant." *Bonilla v. United States,* 894 A.2d 412, 417 (D.C.2006) (internal quotation marks omitted).

■ Although it is true that "a defendant is entitled to an instruction on his theory of the case when properly requested by counsel and when the theory is supported by any evidence," *Stack v. United States,* 519 A.2d 147, 154 (D.C.1986) (internal quotation marks omitted), this court has not yet ruled on the issue whether consent is a defense to assault with significant bodily injury.[1]

---

1. The government concedes that appellant's conviction for simple assault merges into his

Generally, "a criminal offense is a wrong affecting the general public, at least indirectly, and consequently cannot be licensed by the individual directly harmed." WAYNE R. LaFAVE & DAVID C. BAUM, CRIMINAL LAW § 6.5(a), at 381 (5th ed.2010). This court has departed from that principle only in assault cases where the act charged "is one to which consent may be given," *Guarro v. United States,* 99 U.S.App.D.C. 97, 100 n. 4, 237 F.2d 578, 581 n. 4 (1956), such as cases involving sexual assault or kidnapping. *See, e.g., Hicks v. United States,* 707 A.2d 1301 (D.C.1998) (sexual assault); *Davis v. United States,* 613 A.2d 906 (D.C.1992) (kidnapping and sexual assault); *Bush v. United States,* 516 A.2d 186 (D.C.1986) (kidnapping); *McDermett v. United States,* 98 A.2d 287 (D.C.1953) (sexual assault). Put another way, "[c]ertain crimes . . . are defined in terms of the victim's lack of consent, and as to these the consent of the victim is obviously a bar to conviction." LaFAVE & BAUM, *supra. See also* 1 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 46, at 303 (15th ed. 1993) ("[C]onsent destroys the criminal character of an act of sexual intercourse which would otherwise constitute rape.").

Our review of cases in other jurisdictions reveals that "although the defense of consent is applied in the realm of sexual assault, it has been sparingly applied . . . in other areas." *State v. Shelley,* 85 Wash. App. 24, 929 P.2d 489, 491 (1997). This is because "society has an interest in punishing assaults as breaches of the public peace and order, so that an individual cannot consent to a wrong that is committed against the public peace." *Id.* at 491–92; *see also Lyons v. State,* 437 So.2d 711, 712

(Fla.Dist.Ct.App.1983) (noting that the "general view is that consent is not a defense to a criminal prosecution for assault and battery, except in cases of rape" because "[w]hether or not the victims of crimes have so little regard for their own safety as to request injury, the public has a stronger and overriding interest in prohibiting and preventing such acts as this") (internal quotation marks omitted); *State v. Brown,* 143 N.J.Super. 571, 364 A.2d 27, 29 (Law Div.1976) ("The state, not the victim, punishes a person for fighting or inflicting assaults. . . . This is so because these acts . . ., even if done in private, have an impingement (whether direct or indirect) upon the community at large in that the very doing of them may tend to encourage their repetition and so to undermine public morals.").

Engaging in a physical altercation in a public space near Union Station, which resulted in significant bodily injury to Shelton,[2] is a breach to public peace and order and therefore is conduct to which appellant may not use consent as a defense to criminal prosecution. In reaching this conclusion, we find persuasive the reasoning of *State v. Mackrill,* 345 Mont. 469, 191 P.3d 451 (2008). In *Mackrill,* a bar patron who was escorting appellant, an inebriated man who was disturbing other patrons, out of the bar, got into a scuffle with appellant, and appellant hit the patron several times, causing "the back of his head to hit the pavement." *Id.* at 454. Appellant was charged with aggravated assault and argued consent as a defense. *Id.* Concluding that "it is against public policy to permit a person purposely or knowingly to cause serious bodily injury to another, even though that conduct and resulting harm

conviction for assault with significant bodily injury. Accordingly, we remand for the limited purpose of vacating Woods's conviction for simple assault and need not determine wheth-

er and when consent is an affirmative defense to charges of simple assault.

2. We note that appellant does not dispute that Shelton suffered significant bodily injury.

were consented to," the Supreme Court of Montana held that consent is not a defense to aggravated assault. *Id.* at 459.

Appellant argues that *Mackrill* is inapposite because "Montana has a specific consent statute that states consent is ineffective if it is against public policy to permit the conduct or the resulting harm, even though consented to," "a law[ ] which does not exist in the District of Columbia." The absence of a similar consent statute in the District of Columbia does not render the *Mackrill* court's analysis inapplicable, however, because the Montana court did not rest its holding on the consent statute alone; rather, the court thoroughly analyzed the public policy reasons animating the statute and found them in harmony and in keeping with the reasons for the statute. Moreover, the court noted that the state legislature had provided that

"consent [under the statute] would be ineffective if it were against public policy to permit the conduct or the resulting harm." *Id.* at 460.

In addition to the *Mackrill* court, courts that have addressed this issue overwhelmingly have held that consent is not a defense to assault or battery, whether it is in the form of hazing,[3] fighting,[4] beatings rendered as part of a gang initiation,[5] or otherwise.[6] For example, in *State v. Hatfield*, 218 Neb. 470, 356 N.W.2d 872, 874 (1984), two men at a bar consuming alcohol got into an argument and the defendant invited the victim to go outside and settle the dispute. The victim agreed, went outside, "made no effort to fight," and was "badly beaten." *Id.* The defendant argued that the "victim's agreement to enter into a fight constitute[d] an absolute defense to the charge of assault." *Id.* at 876. In

---

3. *In re Khalil H.*, 80 A.D.3d 83, 910 N.Y.S.2d 553, 559 (2010) (holding that "consent is not a valid defense" to hazing).

4. *People v. Lucky*, 45 Cal.3d 259, 247 Cal. Rptr. 1, 753 P.2d 1052, 1072 (1988) (en banc) ("Voluntary mutual combat outside the rules of sport is a breach of the peace, mutual consent is no justification, and both participants are guilty of criminal assault. Thus, where the prosecution's evidence shows a jailhouse scuffle, the scene as witnessed does not suggest defendant may have been acting in self-defense, and defendant presents no evidence in mitigation, a finding of criminal assault is justified.") (citation omitted); *State v. Weber*, 137 Wash.App. 852, 155 P.3d 947, 951 (2007) (holding that "consent is not a defense to the charge of second degree assault" where the assault occurred in the context of a prison fight between inmates); *People v. Reckers*, 251 Ill.App.3d 790, 191 Ill.Dec. 221, 623 N.E.2d 811, 814 (1993) ("[W]e are inclined to agree with the commentators and a number of our sister States who found consent not to be a defense to a battery based on injurious touching.").

5. *Helton v. State*, 624 N.E.2d 499, 514–15 (Ind.Ct.App.1993); *see also Jaske v. State*, 539

N.E.2d 14, 18 (Ind.1989) (holding that "consent" to participate in the initiation into a prison gang "is not a defense to the charge of battery"); *cf. Durr v. State*, 722 So.2d 134, 135 (Miss.1998) (en banc) (holding that victim's consent to "ritualistic beating as a part of the gang initiation" is "not relevant" because the acts "amounted to a reckless infliction of bodily injury and thus did not constitute a lawful act [committed] by lawful means" and affirmed the conviction of manslaughter) (internal quotation marks omitted and alteration in original).

6. *People v. Jovanovic*, 263 A.D.2d 182, 700 N.Y.S.2d 156, 168 n. 5 (1999) ("[A]s a matter of public policy, a person cannot avoid criminal responsibility for an assault [ (sadomasochistic activity) ] that causes injury or carries a risk of serious harm, even if the victim asked for or consented to the act."); *State v. Fransua*, 85 N.M. 173, 510 P.2d 106, 107 (Ct.App.1973) (holding that "consent is not a defense to the crime of aggravated battery" even though the defendant alleged that the "victim ... procur[ed] the weapon and invit[ed] the defendant to shoot him" because the "public has a stronger and overriding interest in preventing and prohibiting" such acts).

rejecting that argument, the court stated that "all attempts to do physical violence which amount to a statutory assault are unlawful and a breach of the peace, and a person cannot consent to an unlawful assault." *Id.*

Another analogous case is *State v. Dunham*, 118 Ohio App.3d 724, 693 N.E.2d 1175, 1179 (1997) (per curiam). There, Dunham and Alexander Hopkins, each accompanied by friends, "engage[d] in a public brawl to settle old or current differences" and Hopkins " 'blacked out' as a consequence of a chokehold applied by Dunham." *Id.* The court held that "where, as here, two persons agree to fight each other not in conformity with statutes authorizing boxing matches, each may be held guilty of assault, and where, as here, the harm visited upon one of the fighters constitutes serious physical harm, the fact that the fight was begun by mutual consent is not a defense, in law." *Id.* at 1176–78.

Appellant contends that *Hickman v. State*, 193 Md.App. 238, 996 A.2d 974, 975 (Md.Ct.Spec.App.2010), "affirms that consent is a defense to assault and is a component of the jury instruction on assault." Appellant's argument is misguided. As a threshold matter, the controlling law in Maryland on consent as a defense to assault is set forth in *Taylor v. State*, 214 Md. 156, 133 A.2d 414 (1957). In *Taylor*, Maryland's highest court held that common law "criminal assault which tends to bring about a breach of the public peace is treated as a crime against the public generally, and therefore the consent of the victim is no defense." *Id.* at 415. *Hickman*, a decision from an intermediate appellate court, does not overrule *Taylor*. See *Halliday v. Sturm, Ruger & Co.*, 138 Md.App. 136, 770 A.2d 1072, 1091 (Md.Ct. Spec.App.2001) (stating that the Maryland intermediate appellate court is "bound to abide" by "clear and unambiguous pronouncement[s] issued by the Court of Appeals").[7] Our decision herein is consistent with *Taylor*.[8]

Appellant also argues that § 22–404 is a "codification of common law assault, to which consent is a defense," citing *Guarro*, 237 F.2d at 581. Appellant's argument is misguided as *Guarro* involved a non-violent sexual touching, which, as already discussed, is not analogous to an assault stemming from a street fight in which one of the participants suffered significant bodily harm. Appellant cites no other case in which consent was held to be a viable defense at common law against a charge of non-sexual assault, nor did this court find any such case.

---

**7.** Even if *Hickman* were the applicable law, it is distinguishable from this case for two reasons. First, relying on the "Maryland Pattern Jury Instructions for Second–Degree Assault," the *Hickman* court found that a lack of consent is an element the government must prove to convict for second-degree assault. *Hickman*, 996 A.2d at 985. Here, neither § 22–404(a)(2) nor the accompanying jury instruction, Criminal Jury Instructions for the District of Columbia, No. 4.102 (5th ed.2012), demands that the government prove a lack of consent. Second, the *Hickman* court implied that the *Taylor* court's "distinction between assaults that breach the public peace and those that do not" is "questionable in light of the abrogation of the common law assault and battery" recognized in *Robinson v. State*, 353 Md. 683, 728 A.2d 698, 703 (1999), and therefore statutory assault and battery charges are not governed by *Taylor*. *Id.* at 984. Even assuming that is true, appellant concedes that § 22–404(a)(2) is a codification of the common law; therefore, *Taylor* is the appropriate authority to consider in this case.

**8.** See *McClintic v. McClintic*, 39 A.3d 1274, 1279 n. 2 (D.C.2012) ("[S]ince the District of Columbia derives its common law from Maryland, decisions of the Court of Appeals of Maryland on questions that have not been determined by [this court] are of great weight.") (first alteration in original and internal quotation marks omitted).

Taken to its logical conclusion, appellant's argument that consent should be a defense to assault where there is significant bodily injury would render non-prosecutable acts that are an affront to the public peace and order, such as a loan shark lending money on the condition that non-payment authorizes a beating or gang members who agree to settle old scores by a shootout. The absurd realities of recognizing consent as a defense to assault with significant bodily injury are not far-fetched. For example, in *Brown*, 364 A.2d at 28, the defendant was charged with assault after "severely beating [the victim] with his hands and other objects" after the victim had "indulged in some spirits." The defendant argued that the victim consented to the beating because the two had an agreement that if the victim "consumed any alcoholic beverages (and/or became intoxicated), [defendant] would punish her by physically assaulting her." *Id.* Appropriately, the court held unequivocally that "no one has the right to beat another[,] even though that person may ask for it." *Id.* at 31.

Accordingly, we hold that consent is not a defense to a charge of assault with significant bodily injury arising out of a street fight. We leave for another day the ques-

tion whether consent may be a defense to assault in contexts such as official or unofficial sporting events,[9] or whether such acts even are properly considered assaults.[10]

## III. Conclusion

In sum, the trial court did not err in holding that appellant was not entitled to a jury instruction on the defense of consent. Accordingly, we affirm appellant's conviction for assault with significant bodily injury and remand to vacate his conviction for simple assault.

*So ordered.*

---

**9.** *See Durr*, 722 So.2d at 135 (stating that in other jurisdictions, "[c]onsent has been found to be a valid defense when the touching ... does not violate an established rule, such as in athletic events. It may also be a viable defense when the person being touched was made aware of the risks prior to consent, and in professions and occupations involving invasions of one's physical integrity.") (internal quotation marks omitted); *Shelley*, 929 P.2d at 491–92 (holding that consent is not a defense to punching another player during a basketball game because such contact was not foreseeable in the game); *Brown*, 364 A.2d at 30 ("There are a few situations in which the consent of the victim (actual or implied) is a defense. These situations usually involve ordinary physical contact or blows incident to

sports such as football, boxing, or wrestling.").

**10.** *See State v. Collier*, 372 N.W.2d 303, 307 (Iowa Ct.App.1985) (applying statutory provision that deems injuries caused to "voluntary participant[s] in a sport, social or other activity" as "not ... an assault" if the act is "not in itself criminal, and such act is a reasonably foreseeable incident of such sport or activity, and does not create an unreasonable risk of serious injury or breach of the peace" and concluding that "sadomasochistic activity" is an assault as it is not a "sport, social or other activity" and it creates a "unreasonable risk of injury").