THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY WASHINGTON, Defendant-Appellant.

Third District   No. 3—91—0267

Opinion filed January 30, 1992.

Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HAASE delivered the opinion of the court:

A jury convicted the defendant, Anthony Washington, of residential burglary and robbery (Ill. Rev. Stat. 1989, ch. 38, pars. 19—3(a), 18—1(a)). The trial court sentenced him to concurrent terms of 15 years' imprisonment for the robbery and 7 years' imprisonment for

the residential burglary. The defendant appeals his 15-year sentence for robbery.

The evidence introduced in the defendant's trial showed that the defendant and four of his friends broke into the home of Robert and Janet Vespa during the early morning hours, threatened them, and robbed them of several possessions before leaving. The following is a summary of facts relevant to determining the issue the defendant has raised on appeal.

At trial, 66-year-old Robert Vespa, Sr., testified that on May 16, 1990, at about 2:30 a.m., he and his wife were asleep in their bed when he was shaken awake and five intruders threatened to kill him unless he gave them money. After jumping up, he was pushed down onto the bed and a flashlight was shined in his eyes. Something that felt like a gun was pressed to his temple. The intruders yelled that they had guns and repeatedly demanded money and threatened to kill the Vespas. When Mr. Vespa told them there was money in the dresser, they ransacked it. They also took Mrs. Vespa's purse after she told them it was in the kitchen. The intruders then left, and Mr. Vespa called the police.

Mr. Vespa testified that his wallet, credit cards, two watches, paper money, some silver coins, a ruby ring, and a black onyx ring with a diamond set in it were taken by the intruders. He could not identify anyone in the courtroom as being one of the intruders because he could not see their faces in his bedroom on the night in question.

Robert's 64-year-old wife, Janet Vespa, also testified at the trial. Her testimony largely corroborated her husband's.

Kevin Eskridge, a friend of the defendant, testified that he went with the defendant to a pawnshop on May 17, 1990. The defendant asked Eskridge to pawn a black onyx and diamond ring for him because the defendant did not have identification with him. Eskridge pawned the ring and gave the defendant the money he received for it. Eskridge testified that he assumed the ring belonged to the defendant as he gave no indication that the ring was stolen. Peoria police detective Kenneth Boddie testified that he recovered the ring from the pawnshop on May 19, 1990. Robert and Janet Vespa identified the ring as one that was taken in the robbery.

Peoria police officer Michael Leroy Johnson testified that he questioned the defendant at the police station on the afternoon of May 19, 1990. Earlier that day, the defendant had denied any involvement in the Vespa robbery to other police officers. According to Johnson, he asked Raymond Clauson, who was also being questioned at the police station in a separate room, to help the police recover the Vespas'

rings. Clauson asked to speak with the defendant. Johnson took the defendant to Clauson, left them alone for a few minutes, returned, and took the defendant to another interview room where they were alone. The defendant then told Johnson that his friend, Kevin, had pawned the ring. Johnson relayed this information to Detective Boddie. The defendant subsequently admitted that he had been with Gary Stein, Adam Wilkerson, and Raymond and Ronald Clauson at the Vespas' house.

Johnson further testified that the defendant agreed to give a written statement. According to the statement, the 18-year-old defendant met with Stein, Wilkerson, and the Clausons on the night in question. They went riding with Stein in his car. The defendant did not know what was going on because he was "under the influence." Stein drove to a gas station where he and Wilkerson bought flashlights and gloves. Stein then drove to a private residence. Stein, Wilkerson, and Ronald Clauson entered the house through a window and then let the defendant and Raymond Clauson in the front door. The defendant was called into the bedroom, where he saw Stein threatening the Vespas and asking for money. He also saw Ronald Clauson taking things out of the dresser drawers. The defendant picked up a ring that Clauson dropped on the floor. He later pawned the ring.

The defendant testified at trial and denied any involvement in the robbery. He stated that he got the ring from Ron Clauson in the early morning hours of May 16, 1990. According to the defendant, he was partying at a friend's house with about 17 other teenagers when Clauson and Stein tried to sell jewelry to people at the house. The defendant said he acquired the ring in exchange for a quarter bag of cocaine.

The defendant also testified concerning his interrogation at the police station. He basically asserted that after lengthy questioning by the police during which he repeatedly denied any involvement in the robbery, he was taken to Raymond Clauson. According to the defendant, Clauson had tears in his eyes and told him that the police were going to impound Clauson's car unless the defendant told the police where the ring was. Officer Johnson told the defendant that he wanted Stein because he was the ringleader, and that the defendant would not serve much time if he testified against the others. The defendant then told Johnson that the ring was at the pawnshop and gave a statement admitting his involvement. The defendant further testified that everything he said in the statement came from information he had received that day from Officers Perkins and Johnson.

The presentence report showed that the 18-year-old defendant had no prior criminal record. In a letter attached to the report, the defendant apologized for his offense and asked to be put on probation so he could finish school. At the sentencing hearing, the defendant's foster mother testified that the defendant was nice and had never stolen anything from her.

In contesting his sentence to the statutory maximum term of imprisonment for robbery, the defendant contends that the trial court failed to give proper consideration to his youth, his remorse, and his lack of prior convictions. He also asserts that his sentence was disparate from the sentences given to other defendants for their convictions arising from the same incident.

Sentencing is a matter of judicial discretion, and absent an abuse of that discretion by the trial court, a sentence may not be altered on review. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) The defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment, must be equally weighed. (*People v. Darnell* (1981), 94 Ill. App. 3d 830, 419 N.E.2d 384.) When mitigating evidence is before the trial court, it is presumed the court considered the evidence absent some indication, other than the sentence itself, to the contrary. *People v. Sawyer* (1985), 139 Ill. App. 3d 383, 487 N.E.2d 662.

■ Here, the sentencing court specifically found in mitigation that the defendant did not have a criminal record. The court also stated that it had considered all the evidence given at trial, the presentence investigation report, and the arguments presented at the sentencing hearing. Thus, the court was also aware of the defendant's age. However, the court placed great weight on the circumstances of the offense, particularly that the Vespas were awakened from their sleep in the middle of the night in their own home, terrorized, and threatened with harm unless they told where their valuables were.

Furthermore, the trial judge stated that he was aware of the defendant's letter of apology, but was entitled to balance the defendant's letter against the statements he made at trial. We agree that in evaluating the defendant's character and his potential for rehabilitation, the trial court may consider what the defendant says during sentencing in light of all the other information presented to the court during the trial and sentencing hearing. (See *People v. Ward* (1986), 113 Ill. 2d 516, 499 N.E.2d 422.) Thus, it was proper to consider that the letter was the first time the defendant appeared to acknowledge his participation in the offense and express remorse for it.

The defendant also complains that his sentence was disparate from that of defendants Adam Wilkerson and Ronald Clauson, who also received 15-year sentences upon pleading guilty to home invasion based upon the instant offense. Both Clauson and Wilkerson have previous criminal records. The defendant has asked this court to take judicial notice of their sentencing records. We have done so and have determined that the sentences are not disparate.

■ Initially, we note that both Wilkerson and Clauson pled guilty. A defendant cannot properly compare his sentence with those imposed upon persons who have entered a plea of guilty. It is proper for a trial court to grant leniency to a defendant who, by his plea, has ensured prompt and certain application of correctional measures, acknowledged his guilt, and showed willingness to assume responsibility for his conduct. (*People v. McClendon* (1986), 146 Ill. App. 3d 1004, 497 N.E.2d 849.) Thus, Wilkerson and Clauson may well have received some leniency based on their pleas.

Furthermore, the same trial judge sentenced the instant defendant, Wilkerson, and Clauson. Therefore, he was well aware of each defendant's background. While Wilkerson and Clauson had previous criminal records and the instant defendant did not, the trial court properly considered that Wilkerson and Clauson were only 15-year-old minors at the time of the offense. In contrast, the instant defendant was already 18 years old. A trial court may consider the defendant's relative maturity in imposing sentence. *People v. Centanni* (1987), 164 Ill. App. 3d 480, 517 N.E.2d 1207.

Based upon our review of the record in the instant case, and the sentencing records in Clauson's and Wilkerson's cases, we are satisfied that the trial judge did not abuse his discretion in sentencing the instant defendant.

We therefore affirm the judgment of the circuit court of Peoria County.

Affirmed.

BARRY, P.J., and GORMAN, J., concur.