# Illinois Official Reports

## Appellate Court

---

### *People v. Ferguson*, 2021 IL App (3d) 200041

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LATREY C. FERGUSON, Defendant-Appellant. |
| Th | Third District<br>No. 3-20-0041 |
| Filed<br>Rehearing denied | September 7, 2021<br>October 7, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 17-CF-748; the Hon. Paul Gilfillan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Thomas A. Karalis, and Emily A. Brandon, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jodi Hoos, State's Attorney, of Peoria (Patrick Delfino and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE HOLDRIDGE delivered the judgment of the court, with
                    opinion.
                    Justice Daugherity concurred in the judgment and opinion.
                    Presiding Justice McDade concurred in part and dissented in part, with
                    opinion.


## OPINION

¶ 1     The defendant, Latrey C. Ferguson, appeals from his conviction for aggravated robbery. The defendant argues (1) the Peoria County circuit court improperly considered that he was on probation when he committed the present offense, (2) the court improperly considered the defendant's student disciplinary records, and (3) defense counsel provided ineffective assistance by failing to object to these errors.

¶ 2                              I. BACKGROUND

¶ 3     On September 11, 2017, the State charged the defendant by indictment, with armed robbery, a Class X felony (720 ILCS 5/18-2(a)(2), (b) (West 2016)). On December 18, 2017, pursuant to a negotiated plea, the defendant entered an open guilty plea to aggravated robbery, a Class 1 felony (*id.* § 18-1(b)(1), (c)). The State's factual basis for the plea indicated that on August 31, 2017, the defendant walked up to Brandon Hobbs's vehicle, pointed a gun at him, and demanded that Hobbs give the defendant his possessions. When Hobbs did not comply, the defendant reached into the vehicle and searched Hobbs's pockets. The defendant retrieved approximately $10 and fled the scene.

¶ 4     During sentencing, the parties discussed at length the presentence investigation report (PSI). The PSI included the defendant's family status, prior criminal history, and student discipline records.

¶ 5     The PSI reported that in case No. 14-CF-116701, on September 16, 2014, the defendant pled guilty to theft in St. Clair County and received a sentence of 24 months' probation. On August 19, 2016, the State filed a petition to revoke probation. According to the PSI, on December 9, 2016, the court extended the defendant's probation to "2/9/2017." On October 4, 2017, the State filed a petition to revoke probation. The petition alleged, *inter alia*, that the defendant committed the armed robbery charged in the instant case.

¶ 6     At the sentencing hearing, the State argued in aggravation that the defendant's student discipline records showed a pattern of delinquency. The State acknowledged that the defendant was 23 years old and had received a tenth grade education. During his time in school, the defendant exhibited a history of aggressive behavior, abusive language, and truancy. The State noted that the defendant had not held employment since he was expelled from high school. Finally, the State noted the defendant had gang associations, did not have relationships with his family, and lacked a positive role model.

¶ 7     Defense counsel argued in mitigation that the defendant's abusive upbringing left him homeless throughout his teenage years and caused his present struggles. Counsel acknowledged that, according to the defendant's jail disciplinary records, the defendant had been disciplined while in the Peoria County jail. The court noted the defendant's disruptive

behavior likely resulted from his struggle with anxiety and posttraumatic stress from being shot in 2016. In allocution, the defendant apologized for his actions that led to the present charges.

¶ 8 In its ruling, the court noted that "school is an opportunity for a person in life to make the best of it, to pull themselves out of whatever unfortunate situation they find themselves." The court acknowledged the defendant's troubles but noted the many opportunities that the defendant had to change his situation. The court noted that the defendant was "amongst those individuals that has one of the worst criminal history for a person of [the defendant's] young age." The court continued that the defendant's many interactions with law enforcement were "consistent with [the defendant's] five- or six-year history of [school] disciplinary reports." Regarding the defendant's school disciplinary reports, the court noted that the reports "sum[ ] up where [the defendant has] been up until this point in [his] life." The court also stated, "the fact you're on probation at the time of this offense, a person on probation arguably should be walking a fine line, a straight line, and not get caught up in something as severe and serious as this." The court considered the defendant's history, character, and statement in allocution and then sentenced the defendant to 11 years' imprisonment. The court concluded that such a sentence was needed to deter others, protect the public, and rehabilitate the defendant. The defendant filed a motion to reconsider his sentence, which the court denied.

¶ 9                                                    II. ANALYSIS

¶ 10 On appeal, the defendant raises three sentencing issues: (1) the court improperly considered that he was on probation when he committed the present offense, (2) the court improperly considered the defendant's student disciplinary records, and (3) defense counsel provided ineffective assistance by failing to object to these errors.

¶ 11 Initially, we note that the defendant argues that he is not required to object to the court's consideration of improper factors at sentencing to properly preserve his right to appeal. See *People v. Atwood*, 193 Ill. App. 3d 580, 593 (1990) ("defense is not required to object to the inclusion of improper factors being taken into consideration while the court is pronouncing sentence"). Alternatively, the defendant acknowledges that, if forfeiture applies, the sentencing errors are reversible under the second prong of the plain error doctrine. The State does not directly respond to the defendant's assertion that his claims of error are preserved. Assuming for the sake of argument that forfeiture applies, we begin by determining whether the court committed a plain error. "To obtain relief under [the plain error] rule, a defendant must first show that a clear or obvious error occurred." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010) (citing *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)).

¶ 12 The trial court has wide latitude in sentencing a defendant to any term prescribed by statute, "[a]s long as the court does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors." *People v. Hernandez*, 204 Ill. App. 3d 732, 740 (1990). Relevant sentencing considerations include "[t]he defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment." *People v. Washington*, 224 Ill. App. 3d 663, 666 (1992). A court may also consider whether a defendant was on a term of probation at the time he committed the instant offense. 730 ILCS 5/5-5-3.2(a)(12) (West 2016). The weight that the circuit court should attribute to any factors in aggravation and mitigation depends on the particular circumstances of the case. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998).

¶ 13    We review the circuit court's sentencing determination for an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). We will find an abuse of discretion only where the court's ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000). We will not disturb a sentence within the applicable sentencing range unless the circuit court abused its discretion. *Stacey*, 193 Ill. 2d at 209-10.

¶ 14    At the outset, we note that the statutory range for a Class 1 felony is 4 to 15 years' imprisonment. See 720 ILCS 5/18-1(b)(1), (c) (West 2016); 730 ILCS 5/5-4.5-30(a) (West 2016). The defendant's 11-year prison sentence for aggravated robbery is within the statutory range for that offense. Therefore, the sentence is presumptively valid, and the defendant bears the burden to rebut this presumption. See *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 12.

¶ 15    The defendant first argues that the court improperly considered his probation status at the time he committed the instant offense because the PSI showed the term of probation imposed in case No. 14-CF-116701 ended on February 9, 2017, well before he committed the instant offense on August 31, 2017.

¶ 16    From our review of the PSI, the February 9, 2017, termination date appears to be a scrivener's error, given the subsequent entry that indicated the State moved to terminate the defendant's probation on October 4, 2017. To confirm our suspicion, we take judicial notice of the online docket entries for St. Clair County case No. 14-CF-116701. See *People v. Torres*, 2019 IL App (1st) 151276, ¶ 36 ("our supreme court has made it clear that it is 'well within' our authority to take judicial notice of court records in related cases," including a defendant's prior criminal proceedings (quoting *In re N.G.*, 2018 IL 121939, ¶ 32)). The docket entry for December 9, 2016, clarifies that the court imposed a 12-month extension on the defendant's term of probation and that term would expire on December 9, 2017. The defendant was serving a term of probation when he committed the instant offense on August 31, 2017. Therefore, the court did not commit a plain error when it considered in aggravation that the defendant was on probation at the time of the instant offense.

¶ 17    The defendant argues that the court improperly considered his student disciplinary records during sentencing. The defendant contends that any consideration of these records was improper given the United States Supreme Court's ruling in *Miller v. Alabama*, 567 U.S. 460 (2012). In further support, the defendant cites several articles that indicate that black youths are disproportionately disciplined in school.

¶ 18    The defendant's student disciplinary records were properly included in the PSI and properly considered by the court. See *People v. Johnson*, 114 Ill. 2d 170, 205 (1986). As the court noted, at a minimum, the defendant's records were relevant to and consistent with his prior history of delinquency. See 730 ILCS 5/5-5-3.2(a)(3) (West 2016) (a court may consider whether the defendant has a history of prior delinquency or criminal activity). Moreover, the defendant's disciplinary records were not the sole factor considered by the court in formulating the defendant's sentence. Instead, the court considered the defendant's many interactions with law enforcement, as well as the defendant's character and rehabilitative potential. See *id.*; see also *Washington*, 224 Ill. App. 3d at 666. We acknowledge that the court told the defendant that he was previously given an opportunity to make his life better through education. However, there is no indication that the court weighed that consideration more heavily. The court very clearly viewed the defendant's sentence as an opportunity for the defendant to reflect

on his actions and mature. Therefore, we find the court properly considered the defendant's history of delinquency and character when determining his sentence.

¶ 19 We reject the defendant's attempt to analogize this case to *Miller*, 567 U.S. at 469, 471-73, where the United States Supreme Court found that juvenile psychological and brain development show that juveniles have diminished culpability for their behavior and, due to their distinctive brain chemistry at that age, are immature, reckless, impulsive, or irresponsible. *Miller* held that mandatory life imprisonment without parole for juvenile offenders violated the eighth amendment's prohibition on cruel and unusual punishment. *Id.* at 470.

¶ 20 In contrast to *Miller*, the defendant was not a juvenile facing a *de facto* life sentence. The defendant committed the present offense when he was 23 years old, and the court imposed a sentence of 11 years' imprisonment. Therefore, the *Miller* rationale does not apply to the defendant, and the court properly considered the defendant's school disciplinary records. As no error occurred, further plain error review is unnecessary.

¶ 21 As the court did not abuse its discretion when it considered the defendant's probation status and student disciplinary records when determining his sentence, we need not address the defendant's alternative ineffective assistance of counsel argument. Counsel cannot be ineffective for failing to object to meritless issues. See *People v. Houston*, 229 Ill. 2d 1, 4 (2008) ("A defendant establishes prejudice by showing that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different.").

¶ 22                                          III. CONCLUSION
¶ 23 The judgment of the circuit court of Peoria County is affirmed.

¶ 24 Affirmed.

¶ 25 PRESIDING JUSTICE McDADE, concurring in part and dissenting in part:

¶ 26 I concur with the findings of the majority that the trial court did not improperly consider Latrey Ferguson's probation status at the time he committed the offense charged. However, because the court considered his high school disciplinary records in aggravation and considered the behavior reported therein as "indicative of irretrievable depravity," I respectfully dissent from the affirmance of his sentence. I would vacate Ferguson's sentence and remand the cause for a new sentencing hearing.

¶ 27 The majority concludes that the "records were relevant to and consistent with his prior history of delinquency." *Supra* ¶ 18. A court may consider that a "defendant has a history of prior delinquency or criminal activity" as a factor in aggravation. 730 ILCS 5/5-5-3.2(a)(3) (West 2016). However, for that purpose, subsection 5-5-3.2(a)(3) allows the court to consider a defendant's "past instances of criminality" evidenced by adjudications of juvenile delinquency, adult convictions, and formal arrest. *People v. Charleston*, 2018 IL App (1st) 161323, ¶ 24. The legislature intended that, in considering previous bad behavior, the sentencing judge would rely solely on reliable information reflecting actual criminal behavior—not on noncriminal behavioral factors often correlated with academic discipline. In this regard, and unlike the majority, I believe that Ferguson's supported observation that black students are disproportionately disciplined for relatively minor infractions provides another

compelling reason, in addition to the lack of statutory justification, why these records are inappropriate for consideration in aggravation. See Russell J. Skiba, Suzanne E. Eckles & Kevin Brown, *African American Disproportionality in School Discipline: The Divide Between Best Evidence and Legal Remedy*, 54 N.Y.L. Sch. L. Rev. 1071, 1086-87 (2010) (reviewing empirical studies showing that black students were subject to academic discipline at a disproportionately higher rate than their white peers).

¶ 28 A review of Ferguson's disciplinary records shows that 35% of the reported incidents were either for language, disrespect, or insubordination. About 15% of the disciplinary reports were related to Ferguson disrupting class, most often by "talking excessively." Another 21% of the infractions related to Ferguson either being tardy or skipping class. In fact, two of the most serious entries included in the report were for "a fight off campus" in 2010 and "fighting in the hallway" in 2006. There is, however, no information on whether those incidents led to formal arrests or juvenile charges. The disciplinary records at issue do not document past instances of criminality and are not relevant to Ferguson's history of delinquency.

¶ 29 Because the disciplinary records are neither a reflection of Ferguson's "past instances of criminality" nor a stated statutory factor in aggravation pursuant to section 5-5-3.2 (see 730 ILCS 5/5-5-3.2 (West 2016)), I conclude the trial court abused its discretion by considering them in aggravation at sentencing.

¶ 30 Without considering the propriety of their use, the majority discounts the impact of the school records, finding that there is no indication that the trial court gave them significant weight. However, the majority reaches this conclusion in part because the court considered those records among other factors. This reasoning is flawed. The weight given to one factor in aggravation is not solely determined from the number of other factors the court looked at or even the relative amount of time spent discussing it. Here, the passion and the opprobrium of the sentencing judge's discussion of the disciplinary records, taken as a whole, showed that the court weighed the records heavily while minimizing other elements of Ferguson's personal history identified in the PSI, highlighting those records to downplay his troubled family circumstances and to deny him the possibility of any rehabilitative potential.

¶ 31 In relevant part, the court stated:

"In part, school is an opportunity for a person in life to make the best of it, to pull themselves out of whatever unfortunate situation they find themselves, and you've had your share. I acknowledge the reference in your PSI, having been physically and emotionally abused in the hands of your mother's boyfriend. But you had the opportunity to pull yourself up in school. And what did you do? You're—I've said this before—you're probably every good parents' [*sic*] worst nightmare when it comes to a quality education for their children. You did everything you could—it seems like intentionally—in the way of class disruption: fighting, abusive language, cutting class, complete lack of respect for those people in charge."

¶ 32 This discussion reveals the sentencing judge's speculative assumption that Ferguson had sufficient (and precocious) insight or adequate parental guidance to appreciate that education was an opportunity to uplift himself from the "unfortunate" situation of physical and emotional abuse. The court relied on the records to conclude that Ferguson was a "disruption" to his peers and a "nightmare" to their "good" parents because he did not appreciate the value of an education. "Where the sentencing judge relies on improper factors, including prejudice or speculation, the sentence should be vacated and the cause remanded for resentencing." *People*

*v. Zapata*, 347 Ill. App. 3d 956, 964 (2004). Rather than reflect some fundamental defect in Ferguson's character or a culpable lack of appreciation for education, the discipline report implies a cycle in which the likely root of Ferguson's misbehavior—the abuse he was experiencing—was never addressed. Instead, Ferguson was repeatedly subjected to punitive measures that very likely only exacerbated the problem. In considering the trial court's discussion quoted above, it is apparent that the sentencing judge weighed Ferguson's behavior as reported in the disciplinary records more heavily than his abusive family experience and speculated on the records' value in reflecting his rehabilitative potential.

¶ 33 The court's discussion is still more problematic, however, because the court assumed that, despite his young age at the time of its creation, this record of Ferguson's misbehavior was somehow, to some extent, persuasive on his lack of any rehabilitative potential. The disciplinary report attached to the PSI included entries from when Ferguson was only 11 years old. Indeed, he points out that approximately 30% of the referrals included in the report took place when Ferguson was a middle schooler. In *Miller*, the United States Supreme Court recognized that scientific studies concerning juvenile psychology and brain development show that juveniles have distinctive attributes that diminish culpability for their behavior. *Miller*, 567 U.S. at 471-73. The *Miller* Court recognized that a person's immature, reckless, impulsive, or irresponsible behavior as a juvenile is more the product of brain chemistry than inherently bad character. And therein lies the danger of using a defendant's school disciplinary history as evidence of his bad character: it fails to consider that, when compared to adults, juveniles are (1) more immature and irresponsible, (2) more vulnerable to negative influences and pressures from family and peers, and (3) "more malleable than adults—their characters are less fixed and their malfeasance is less indicative of irretrievable depravity." *People v. Holman*, 2017 IL 120655, ¶ 35 (citing *Miller*, 567 U.S. at 471).

¶ 34 The majority concludes that *Miller* and its rationale are inapplicable to the consideration of the disciplinary records because Ferguson was not within the class of offenders directly addressed in *Miller*. I respectfully disagree. *Miller* requires sentencing judges "to take into account how children are different." *Miller*, 567 U.S. at 480. It rejected the notion that a juvenile's behavior, without further evaluation, may reveal much about his rehabilitative potential as an adult. See *id.* (requiring "individualized consideration" at sentencing). By logical extension, the juvenile characteristics highlighted in *Miller* should not be ignored when a juvenile's conduct is being evaluated for sentencing purposes. To conflate any permutation of Ferguson's non-criminal school disciplinary history with a defect in character is tantamount, with regard to those records, to "making youth (and all that accompanies it) irrelevant" at sentencing.

¶ 35 For all of the foregoing reasons, the trial court erred by giving these school disciplinary records *any* weight, and therefore, Ferguson should be granted a new sentencing hearing.