NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241021-U

NO. 4-24-1021

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 19, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| STYLES STUCKEY, | ) | No. 21CF274 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Paul P. Gilfillan, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices Zenoff and Lannerd concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant failed to establish either his entitlement to a remand for further postplea proceedings or ineffective assistance of his postplea counsel based upon postplea counsel's failure to challenge defense counsel's ineffectiveness for not objecting to a school disciplinary record contained within defendant's presentence investigation report.

¶ 2   Defendant, Styles Stuckey, pleaded guilty to aggravated vehicular hijacking (720 ILCS 5/18-4(a)(1) (West 2020)), and the trial court sentenced him to 28 years in prison. He appeals, arguing the court erred in considering his school disciplinary record at sentencing. Defendant also contends that his defense counsel provided ineffective assistance for failing to raise an objection to that record. Further, he argues that his postplea counsel provided ineffective assistance of counsel and failed to strictly comply with Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024) by failing to raise the issue of defense counsel's ineffectiveness. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4            In May 2021, the State charged defendant by information with aggravated vehicular hijacking (*id.* § 18-4(a)(3)) (count I), vehicular hijacking (*id.* § 18-3(a)) (count II), unlawful possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2020)) (count III), and aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(2) (West 2020)) (count IV). In June 2021, a grand jury indicted him for the same four offenses. The charges were based on allegations that defendant knowingly took a vehicle from the victim's presence by the use or threat of force and while armed with a handgun. (Although the allegations against defendant were that he committed the charged offenses while armed with a handgun, both the State's information and the indictment charged him with aggravated vehicular hijacking under a statutory subsection that requires the offense to be committed while "armed with a dangerous weapon, other than a firearm" (*id.* § 18-4(a)(3)), and not the subsection that provides for the commission of the offense while being "armed with a firearm" (*id.* § 18-4(a)(4)).)

¶ 5            In November 2021, defendant, who was then represented by attorney Gary Morris, appeared in court. Morris informed the trial court that defendant had agreed to plead guilty to a fifth count added by the State, charging him with aggravated vehicular hijacking based on allegations that defendant took a motor vehicle from the presence of a person over 60 years of age by the use or threat of force (*id.* § 18-4(a)(1)). In exchange for defendant's plea, the State agreed to dismiss the four original counts against him. The parties also acknowledged that as a result of his plea, defendant faced a sentencing range of 6 to 30 years in prison and that he was eligible for "day-for-day" sentence credit. Upon inquiry by the court, defendant asserted he understood the terms of his plea, the penalties he faced, and the rights he would be giving up by pleading guilty.

¶ 6            The State's factual basis showed the 67-year-old victim, Vickie Hall, would testify

that on May 19, 2021, in Peoria, Illinois, she opened the door to her vehicle, a blue Chevrolet Trax, and placed her purse and key fob inside before going to check her mail. She noticed two black males exit a white Chevrolet Impala and attempt to get into her vehicle. When Hall confronted them, one of the males pointed a handgun at her and stated, " 'If you don't get back, I will kill you.' " Both males then got into Hall's vehicle and drove away, followed by the white Chevrolet Impala.

¶ 7       The State asserted its evidence would further show that the Chevrolet Trax was "equipped with Onstar." After being contacted by the police, OnStar disabled the vehicle and provided its location via GPS. The police found the vehicle and located surveillance cameras in the area that showed it pulling into an alley and then into a parking space. Four individuals, "two black males and two juvenile females," were shown walking away from the vehicle. Defendant was identified as one of the four individuals. Ultimately, the police located defendant and his codefendant, Antonio Monroe, inside a Stop N Save. Surveillance video from outside that store showed defendant placing a firearm in a trash can. When a police officer entered the Stop N Save, defendant and Monroe went to a different aisle of the store. Each removed an article of clothing he was wearing, a jacket and a sweatshirt, and handed the clothing to a female. The female put the jacket on and attempted to hide the sweatshirt.

¶ 8       Following the State's factual basis, defendant denied that he was threatened into pleading guilty or promised anything outside of the parties' agreement, and he maintained he was pleading guilty of his own free will. The trial court accepted defendant's guilty plea and set the matter for sentencing.

¶ 9       In December 2021, defendant filed a motion to withdraw his guilty plea. He argued he had not been able to adequately review discovery in his case with his prior attorney and that

Monroe, his codefendant, was "now willing to testify" on his behalf after previously refusing to do so. In an addendum to his motion, defendant alleged Monroe provided a letter indicating defendant did not commit the charged offense. He attached a copy of the letter to his filing.

¶ 10　　　In January 2021, defendant's presentence investigation report (PSI) was filed. The PSI showed defendant was born in November 2001 and 19 years old at the time of the charged offenses. His criminal history included a 2019 juvenile adjudication for the misdemeanor offense of resisting a peace officer. For that offense, defendant was sentenced to 12 months' probation and 30 days in detention, pending a remission hearing. He ultimately served his remitted sentence, and his "probation was terminated as unsuccessful." Defendant also had two adult convictions—a 2020 felony conviction for unlawful possession of a controlled substance and a 2020 misdemeanor conviction for domestic battery. He was serving sentences of probation for both of those offenses at the time of the underlying charges.

¶ 11　　　The PSI further showed defendant was raised by his mother and that "his biological father was in prison for most of his life." His "father figure growing up" was his mother's boyfriend, who had passed away approximately six years earlier. Defendant had two siblings, with whom he reported being close. His mother, siblings, and three aunts wrote statements in support of him, which were attached to the PSI and described defendant as a respectful, helpful, loving, and caring person. Defendant was also the father of two young children, ages two and one. He reported getting along well with his children's mothers and being present in his children's lives, stating he "would often watch [his children] if their mothers were unable to do so." Defendant stated "he would take his children to the park to see and play with them." However, the PSI also stated that defendant "struggle[d] with being able to provide for his two children" and that the mother of his youngest child was the named victim in his 2020 domestic battery case.

¶ 12    With respect to education and employment, the PSI showed defendant had neither graduated high school nor "held a stable job for longer than a few months at a time." He completed high school through grade 11 and needed 24 credit hours to graduate. Although defendant reported "that he did not have problems" in school, his school records indicated otherwise. Specifically, the PSI stated as follows:

> "[Defendant's] disciplinary records show many minor infractions, detentions[,] and in/out of school suspensions. Many of the disciplinary actions were the result of problems with those placed into an authoritative position within the school system including bus drivers, teachers[,] and administrators.
>
> The most recent suspension was due to involvement in a fight in the parking lot at Woodruff High School on [February 8, 2019,] which involved 20 students, creating a safety concern. The defendant was attending Woodruff High School but was sent to the Knoxville Center for Student Success as a result of the numerous infractions [he] received."

¶ 13    Defendant's school disciplinary report was attached to the PSI. Although the page numbering on the report indicates it was a total of 63 pages in length, the document spans only 32 pages of the appellate record, with only the odd numbered pages of the report appearing in the record as a PSI attachment. The report contained numerous entries dated from 2009 to 2019, and it described misbehavior by defendant and the disciplinary actions taken by the school in response. The report listed "offense[s]," including "disruption," "electronics," "insubordination," "cutting class," and "aggressive acts," and it described alleged misbehavior by defendant such as refusing to surrender his cell phone in class, leaving class early without permission, making negative or threatening comments to others, and becoming physically aggressive with others.

¶ 14    The PSI stated defendant attributed his involvement in the offense to his association with Monroe, who pleaded guilty to vehicular hijacking in October 2021 and was sentenced to 24 years in prison. Defendant maintained that he planned to have no friendship or relationship with Monroe in the future and asserted that he had distanced himself from Monroe as much as possible while incarcerated. According to the PSI, statements from defendant's family members "support[ed] the claim that" defendant associated with bad influences. Additionally, although defendant claimed no gang affiliation, "[a]vailable information indicate[d] [he] would associate with gang members who are involved in gun violence." Further, the PSI stated that in January 2021, defendant was hospitalized and underwent emergency surgery after being shot in the neck.

¶ 15    Finally, Hall's victim impact statement was also attached to the PSI. Hall asserted the incident at issue impacted her ability to sleep at night and caused her to experience fear and anxiety.

¶ 16    In January 2022, the trial court heard and denied defendant's motion to withdraw his guilty plea and then proceeded with his sentencing. During the hearing, the court noted the PSI and asked whether the parties had any additions, corrections, or modifications. The State informed the court that it had none, and, on defendant's behalf, Morris stated as follows: "We found no mistakes in it, so it's fine with us." Later, upon inquiry by the court, Morris, again, confirmed that defendant had no "additions or corrections" to the PSI. After the State represented that it had "no formal evidence" to present, defendant called his mother, Belinda Williams, to testify on his behalf. Williams asserted defendant "was a good kid" and that he had never been in trouble before. She stated that prior to the offense, defendant was going to school and "working with a plumber over the weekends."

¶ 17    In presenting argument to the trial court, the State maintained that the use of a gun

- 6 -

during the commission of the offense was a factor in aggravation and that defendant's criminal history and "64[-]page [school] disciplinary report" refuted his mother's testimony that he was "a good kid" who had never been in trouble. The State also argued that defendant took no responsibility for his actions and asked the court to impose a maximum sentence of 30 years in prison. The record reflects that during the State's argument, defendant interjected several comments, including asking if the State was "done making [him] look bad" and indicating that he had not done anything wrong.

¶ 18     On defendant's behalf, Morris argued that his "reading of the evidence" showed that although defendant disposed of the gun that was used in the offense, Monroe was the individual who "held the lady up and threatened her." He asked the trial court to impose a lesser sentence than the 24-year sentence Monroe received. Defendant provided a statement in allocution, asserting he "shouldn't get punished for something [he] didn't do."

¶ 19     The trial court sentenced defendant to 28 years in prison. In setting forth its ruling, the court noted defendant's lack of accountability and the nature of the offense, including the use of a gun during its commission. It also referenced the "60-something pages of *** disciplinary reports from [defendant] in a school system" and found the contents of those reports contradicted the descriptions of defendant in the "kind letters" written by his family members. As an example, the court noted a disciplinary report entry that stated defendant was asked to stop bothering other students and told that he "needed to stop hitting females," and he responded by calling someone a racial slur. It noted a second entry that described defendant as threatening "to beat the bus driver's a*** several times on the way to school."

¶ 20     The trial court further noted defendant's behavior throughout the underlying proceedings. It found defendant had not "ever presented [himself] as a person that took anything

seriously" and noted for the record that defendant was leaning back in his chair, "sort of looking at the ceiling," and rolling his eyes. Additionally, regarding defendant's level of participation in the offense, the court determined that "defendant was a part of having the gun," even "if he didn't hold the gun." Finally, the court also pointed out that defendant had "priors," stating that "[i]n the short window that he even had to commit crimes, he made use of it by committing them."

¶ 21 In February 2022, defendant filed a motion to reconsider his sentence. He argued his sentence was disproportionate to that of his codefendant, Monroe, who pleaded guilty to "an extended term on a Class 1 offense of vehicular hijacking," faced the same maximum 30-year prison sentence, and received a 24-year prison sentence. According to defendant, Monroe had greater, more serious involvement in the underlying offense and a criminal history that included a pending felony case for possession of a stolen vehicle.

¶ 22 In March 2022, the trial court held a hearing on defendant's motion to reconsider. In denying the motion, the court rejected defendant's argument that he was less responsible for the underlying incident than Monroe. It reiterated the seriousness of the offense and defendant's lack of accountability. The court noted defendant's school disciplinary report and referenced entries stating that defendant had become physical with others and was disruptive and disobedient. It further stated as follows:

> "And I'm not punishing you or trying to give you consequences for bad behavior then, but I'm trying to learn who you are, and where you've come from, and how you are where you are. And I can only judge your future by your past. And you wanted to show *** in your past, to everybody else, that [defendant] was in charge, [defendant] was going to do it his way. Not somebody else's ways, [defendant's] way."

The court concluded by reiterating the circumstances of the offense, including the use of a gun, and indicating that with sentence credit, defendant would be required to serve "an actual 14" years in prison.

¶ 23     Defendant appealed the trial court's judgment. On appeal, the parties filed an agreed motion for summary remand on the basis that the record did not contain a certificate filed pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). This court allowed the motion, ordering as follows:

> "This cause is remanded to the circuit court for (1) the filing of a [Rule] 604(d) certificate; (2) the opportunity to file a new Rule 604(d) motion, if counsel concludes a new motion is necessary; (3) a new hearing; (4) a ruling on all pending Rule 604(d) motions; and (5) strict compliance with the requirements of Rule 604(d)." *People v. Stuckey*, No. 4-22-0308 (July 28, 2022) (order for summary remand).

¶ 24     On remand, Morris filed a Rule 604(d) certificate but no new postplea motions. In June 2023, the trial court conducted a hearing at which Morris stated defendant "wishe[d] to proceed forward again on the motion to withdraw guilty plea." In support of that motion, defendant testified that he pleaded guilty on the day that his case was set for trial because he realized Monroe would not testify on his behalf as promised. However, approximately two weeks after defendant's guilty plea, Monroe informed defendant that he would testify. Defendant expected Monroe to state that Monroe "was the one who pointed the gun at the lady and took the lady['s] car." As a result, defendant desired to withdraw his guilty plea and proceed with a trial.

¶ 25     Again, the trial court denied defendant's motion to withdraw his guilty plea. Following the court's ruling, the State noted defendant had previously filed a motion to reconsider

his sentence. The court then also denied that motion.

¶ 26 Defendant appealed and, like before, the parties filed an agreed motion for summary remand. The motion asserted Morris's Rule 604(d) certificate did not meet the content requirements of the rule. This court allowed the motion, remanding for strict compliance with Rule 604(d). *People v. Stuckey*, No. 4-23-0680 (Dec. 4, 2023) (order for summary remand).

¶ 27 On remand for the second time, defendant's case was assigned to a different trial judge. The trial court also allowed Morris to withdraw as defendant's attorney and appointed attorney Danielle Sipiora to serve as defendant's new postplea counsel. In May 2024, Sipiora filed a Rule 604(d) certificate asserting she had (1) consulted with defendant in person, by mail, by phone, or by electronic means to ascertain his contentions of error in the entry of his guilty plea and sentence, (2) examined the trial court file and report of proceedings of his guilty plea and sentencing hearing, and (3) "made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings."

¶ 28 The same month, Sipiora also filed an amended motion to reconsider sentence on defendant's behalf, alleging the trial court erred by (1) relying on defendant's lengthy school disciplinary report when imposing his sentence and (2) imposing a lengthier sentence for defendant than Monroe when defendant was the less culpable individual. Defendant's PSI with its attachments, including defendant's school disciplinary report, was attached to the motion. (The disciplinary report attached to defendant's amended motion spans over 60 pages of the appellate record, contains both even and odd numbered pages of the report, and contains entries ranging from 2008 to 2019.) With respect to defendant's challenge to his disciplinary record, the motion cited the Third District's decision in *People v. Ferguson*, 2021 IL App (3d) 200041, pointing out that while the *Ferguson* majority approved the use of disciplinary records at sentencing, a "strong

dissenting opinion" in that case showed why the use of such records may not be appropriate.

¶ 29        In July 2024, the trial court conducted a hearing on defendant's motion to reconsider. Relevant to this appeal, Sipiora argued the court had relied heavily on defendant's "extensive" school disciplinary record at his sentencing and that the *Ferguson* dissent set forth "why disciplinary records may not be appropriate when the behavior is indicative of irretrievable depravity." In arguing that the court abused its discretion by considering defendant's disciplinary records, she pointed out that the earliest "offense" date in his records was from 2008, when defendant would have been about eight years old. Sipiora also asserted that, in some instances, the reports of defendant's misconduct were based on "secondhand" or "thirdhand" information.

¶ 30        Ultimately, the trial court denied defendant's amended motion to reconsider. In so holding, it determined no error occurred with respect to the consideration of defendant's school disciplinary report. It found the report was relevant, as defendant was a young adult at the time of the offense. The court also held that although the report was referred to at sentencing, it was not "over emphasi[zed]. Finally, it concluded the report was appropriately considered under the majority holding in *Ferguson*.

¶ 31        This appeal followed.

¶ 32                                II. ANALYSIS

¶ 33        On appeal, defendant argues that the trial court erred by considering his school disciplinary report when imposing his sentence. He asks this court not to follow the Third District's majority opinion in *Ferguson*, which found no error in the consideration of such reports. Defendant asserts his school disciplinary report was neither relevant nor reliable; school discipline disproportionately affects black youths; and consideration of school disciplinary reports violates the principles of *Miller v. Alabama*, 567 U.S. 460 (2012), wherein the United States Supreme Court

recognized children's diminished culpability and greater prospects for reform.

¶ 34                                    A. Waiver

¶ 35          Initially, defendant acknowledges that his challenge to the trial court's consideration of his student disciplinary report is "procedurally barred" because Morris, his defense counsel, did not object to the report's inclusion within his PSI. He also points out that although Sipiora challenged the court's consideration of the report in his amended motion to reconsider, she neglected to raise Morris's ineffectiveness in failing to object to the report—an allegation that would have overcome the procedural bar to the underlying claim. Defendant maintains that, as a result, Sipiora herself was ineffective. He also contends that for those same reasons, although Sipiora filed a facially valid Rule 604(d) certificate, the record refutes her certification that she made the necessary amendments to his postplea motion. Defendant asks this court to either (1) consider his school-disciplinary-report claim as a matter of judicial efficiency due to "the two layers of ineffective assistance of counsel" he received or (2) remand the matter for a third time for strict compliance with Rule 604(d).

¶ 36          We agree that the record shows defendant waived his challenge to the trial court's consideration of the student disciplinary report attached to his PSI. As suggested by the parties, "a defendant must raise any and all objections to the PSI [with] the trial court." *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 56. A court "may rely on *all* of the information in the unobjected to PSI to the extent it believes it is relevant and reliable." (Emphasis in original.) *Id.* Further, "[c]ounsel's explicit refusal to object to the information in the PSI when asked by the trial court is not a mere oversight but essentially amounts to a stipulation to the accuracy of the PSI's content in its entirety." *People v. Dillard*, 2025 IL App (4th) 230739, ¶ 157. "When defense counsel affirmatively acquiesces to actions taken by the trial court, any potential claim of error on appeal

- 12 -

is waived, and a defendant's only available challenge is to claim he received ineffective assistance of counsel." (Internal quotation marks omitted.) *People v. Baker*, 2022 IL App (4th) 210713, ¶ 61.

¶ 37 Here, the record shows that at defendant's sentencing hearing, the trial court asked the parties whether they had any suggested additions, corrections, or modifications to defendant's PSI. Morris explicitly stated that he and defendant "found no mistakes in it, so it's fine with us." Later in the hearing, he confirmed for a second time that defendant had no "additions or corrections" to the PSI. Morris's actions amount to a stipulation of the PSI's accuracy. Thus, any challenge to the PSI or its contents was waived by defendant and could only be brought by way of a claim that Morris provided ineffective assistance of counsel.

¶ 38 Despite Morris's action in acquiescing to the trial court's consideration of the PSI and its contents at sentencing, Sipiora filed an amended motion to reconsider on defendant's behalf that challenged the contents of his PSI, specifically, his school disciplinary report, without also claiming ineffective assistance by Morris. As noted, defendant argues such action amounts to a failure to strictly comply with the requirements of Rule 604(d), requiring a remand for further postplea proceedings.

¶ 39 "Rule 604(d) governs the procedure to be followed when a defendant wishes to appeal from a judgment entered upon a guilty plea." *In re H.L.*, 2015 IL 118529, ¶ 7. The rule requires that the defendant's counsel file a certificate with the trial court, asserting that counsel has (1) consulted with the defendant by phone, mail, electronic means, or in person to ascertain the defendant's contentions of error in the sentence and the entry of the guilty plea, (2) examined the trial court file and the report of proceedings of both the guilty plea hearing and the sentencing hearing, and (3) "made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024). Postplea counsel must

strictly comply with Rule 604(d)'s provisions, and failing to do so requires a remand for the filing of new postplea motions and a new hearing on the motions. *People v. Gorss*, 2022 IL 126464, ¶ 19. "Strict compliance requires counsel to prepare a certificate that meets the content requirements of the rule and to file the certificate with the trial court." *H.L.*, 2015 IL 118529, ¶ 25. However, even a facially valid certificate may be refuted by the record. *People v. Curtis*, 2021 IL App (4th) 190658, ¶¶ 36-37.

¶ 40        Recently, an unpublished decision of this court held that the record rebutted postplea counsel's Rule 604(d) certificate where "[t]he motion filed by [postplea] counsel did not adequately present the contentions of error in a manner that would overcome a procedural challenge in the circuit court." *People v. Ivy*, 2024 IL App (4th) 230382-U, ¶ 20. Even so, this court has also held that defects in postplea pleadings do not require remand for further proceedings where postplea counsel has filed "a facially compliant Rule 604(d) certificate and the trial court determines after a full and fair hearing that the defendant's claims are meritless." *People v. Brown*, 2023 IL App (4th) 220573, ¶ 50. Additionally, in *People v. Shirley*, 181 Ill. 2d 359, 369 (1998), our supreme court rejected the "premise that the [Rule 604(d)] strict compliance standard *** must be applied so mechanically as to require Illinois courts to grant multiple remands and new hearings following the initial remand hearing." Rather, the court held that "[w]here *** the defendant was afforded a full and fair second opportunity to present a [postplea motion], [there is] limited value in requiring a repeat of the exercise, absent a good reason to do so." *Id.*

¶ 41        In this case, the record shows the trial court conducted a postplea hearing addressing, in full, the claims Sipiora raised on defendant's behalf in his amended motion to reconsider. At the hearing, Sipiora argued the underlying claim at issue in this appeal—that the sentencing court erred in considering the school disciplinary report attached to defendant's PSI.

Significantly, the court did not reject that claim of error as waived. Rather, it fully considered the claim, deeming it meritless. Because defendant had a full and fair opportunity to present his amended motion to reconsider, a remand for further proceedings is unnecessary.

¶ 42         Moreover, we find that waiver does not prevent this court from also reaching the merits of defendant's underlying challenge to his school disciplinary records. In particular, on appeal, defendant explicitly argues Sipiora was ineffective as defendant's postplea counsel for failing to argue that Morris was ineffective for not objecting to defendant's school disciplinary report. In this case, determining Sipiora's effectiveness necessarily involves consideration of the issue at the heart of defendant's appeal—whether the trial court erred by considering his school disciplinary report when imposing his sentence. See *People v. Pingelton*, 2022 IL 127680, ¶ 60 (stating a defendant's attorney "cannot be considered ineffective for failing to raise or pursue what would have been a meritless motion or objection"). Further, we note that the ineffective assistance of postplea counsel under the *Strickland* standard (*Strickland v. Washington*, 466 U.S. 668 (1984)) is generally a cognizable claim following a postplea hearing and the denial of postplea motions. See *People v. Brown*, 2023 IL App (4th) 220400, ¶¶ 31-32 (considering whether postplea counsel was ineffective under the *Strickland* standard for failing to raise certain arguments during the defendant's postplea proceedings). Accordingly, given that Sipiora filed a facially valid Rule 604(d) certificate, the trial court conducted a full and fair postplea hearing on defendant's amended motion to reconsider, and defendant explicitly alleges Sipiora's ineffectiveness related to his ultimate underlying claim of error, we will address the merits of his claims.

¶ 43                         B. The Trial Court's Consideration of

Defendant's School Disciplinary Report

¶ 44         Again, defendant argues the trial court erred by considering his school disciplinary

report at his sentencing. He also contends that Morris was ineffective for failing to object to the court's consideration of the report and that Sipiora was ineffective for failing to raise the issue of Morris's ineffectiveness.

¶ 45　　　　The United States Supreme Court's decision in *Strickland* sets forth the applicable standard for ineffective-assistance-of-counsel claims. *People v. Jones*, 2023 IL 127810, ¶ 51. Under that standard, "[a] defendant must show that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that the result of the proceeding would have been different but for counsel's unprofessional errors." *Id.* As noted, counsel cannot be deemed ineffective "for failing to raise or pursue what would have been a meritless motion or objection." *Pingelton*, 2022 IL 127680, ¶ 60.

¶ 46　　　　With respect to sentencing, "[e]very criminal defendant has the right to be sentenced based on only proper sentencing factors." *Dillard*, 2025 IL App (4th) 230739, ¶ 152. When fashioning an appropriate sentence, "a trial court should consider (1) the defendant's history, character, and rehabilitative potential; (2) the seriousness of the offense; (3) the need to protect society; and (4) the need for punishment and deterrence." (Internal quotation marks omitted.) *Id.* A court should also consider statutory factors in aggravation and mitigation. *Id.*

¶ 47　　　　Ultimately, the trial court's sentencing determination is entitled to great deference, as " 'the trial judge, having observed the defendant and the proceedings, is in a much better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age.' " *Id.* ¶ 153 (quoting *People v. Snyder*, 2011 IL 111382, ¶ 36). A sentence imposed within the applicable statutory range is presumed proper. *Id.*

¶ 48　　　　"Whether the trial court relied upon an improper factor during sentencing is a question of law reviewed *de novo*." *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 55. A strong

presumption exists "that the trial court's sentence was based on proper legal reasoning, and a reviewing court should consider the record as a whole rather than a few isolated statements." *Id.* Further, "[a] defendant bears the burden to affirmatively establish that his sentence was based on an improper factor." *Id.* On review, a sentence will not be reversed "unless it is evident that the trial court relied upon an improper factor." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 103.

¶ 49　　　　　Additionally, we note "that the rules of evidence that govern the guilt or innocence phase of a trial are not applicable at sentencing." *People v. Williams*, 149 Ill. 2d 467, 490 (1992). "[A] a sentencing judge is given broad discretionary power to consider various sources and types of information so that he can make a sentencing determination within the parameters outlined by the legislature." *Id.* Generally, "[e]vidence is admissible in a sentencing hearing provided the proffered evidence is relevant and reliable." *Id.*

¶ 50　　　　　In this case, defendant pleaded guilty to aggravated vehicular hijacking of a victim over the age of 60, a Class X felony. 720 ILCS 5/18-4(a)(1), (b) (West 2020). He was subject to a sentencing range of 6 to 30 years in prison (730 ILCS 5/5-4.5-25(a) (West 2022)), and the trial court sentenced him to 28 years in prison. (We note that, on appeal, defendant contends his sentence was required to be served at 85%, citing section 3-6-3(a)(2)(iii) of the Unified Code of Corrections (*id.* § 3-6-3(a)(2)(iii)); however, that section provides that a prisoner "shall receive no more than 4.5 days of sentence credit for each month of his or her sentence" when the prisoner is serving a sentence for aggravated vehicular hijacking *and* "when the court has made and entered a finding *** that the conduct leading to conviction *** resulted in great bodily harm to a victim." *Id.* In this case, there was no alleged bodily harm to the victim and no such finding by the court. Moreover, the record reflects both the parties' and the court's understanding that defendant was eligible for day-to-day sentence credit.)

- 17 -

¶ 51	Defendant's arguments on appeal challenge both the relevancy and reliability of his school disciplinary report. Like below, he cites Justice McDade's partial dissent in *Ferguson*, 2021 IL App (3d) 200041 ¶¶ 25-35 (McDade, P.J., concurring in part and dissenting in part), finding such records were inappropriate for consideration by a trial court at sentencing. Justice McDade determined there was no statutory justification for the consideration of school disciplinary records and that the defendant had offered a compelling and "supported observation that black students are disproportionately disciplined for relatively minor infractions." *Id.* ¶ 27. Justice McDade also found that associating a "non-criminal school disciplinary history with a defect in [the defendant's] character" essentially made youth and its accompanying characteristics irrelevant at sentencing, in contravention of the Supreme Court's decision in *Miller. Id.* ¶ 34.

¶ 52	Significantly, however, the *Ferguson* majority concluded otherwise, holding "[t]he defendant's student disciplinary records were properly included in the PSI and properly considered by the [trial] court." *Id.* ¶ 18. The majority determined such records "were relevant to and consistent with [the defendant's] prior history of delinquency," noting that a statutory factor in aggravation was a defendant's history of prior delinquency or criminal activity. *Id.* (citing 730 ILCS 5/5-5-3.2(a)(3) (West 2016)). Additionally, it found that because the defendant was not a juvenile and committed the charged offense when he was 23 years old, the Supreme Court's decision in *Miller*, holding that mandatory life imprisonment without parole for juvenile offenders was unconstitutional, was inapplicable. *Id.* ¶¶ 19-20.

¶ 53	Defendant argues that we need not follow the majority decision in *Ferguson*, arguing that " 'the opinion of one district, division, or panel of the appellate court is not binding on other districts, divisions, or panels.' " *People v. Chatman*, 2022 IL App (4th) 210716, ¶ 49 (quoting *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008)).

However, we note that two separate panels of our own district have also rejected challenges to the consideration of school disciplinary records at sentencing. In *Dillard*, 2025 IL App (4th) 230739, ¶ 161, the defendant raised such a challenge and, similar to defendant in this case, relied on Justice McDade's partial dissent in *Ferguson*. However, "[l]ike the majority in *Ferguson*, we conclude[d] that the trial court's consideration of defendant's school disciplinary record was not improper." *Id.*

¶ 54    In *People v. Walker*, 2023 IL App (4th) 220737-U, a recent unpublished decision of this court, we reached the same ultimate conclusion. See Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) (providing that nonprecedential orders of this court entered on or after January 1, 2021, may be cited for persuasive purposes). There, the trial court had "considered the defendant's violent behavior at school as 'nonstatutory factors in aggravation.' " *Walker*, 2023 IL App (4th) 220737-U, ¶ 12. On review, we found the defendant's school disciplinary record was "relevant as it demonstrated [the] defendant's troubled history with structure and authority." *Id.* ¶ 23. We also noted that that the defendant had not alleged and the record did not suggest that the defendant's school disciplinary records were factually inaccurate. *Id.*

¶ 55    Here, defendant's school disciplinary report was similarly relevant, demonstrating defendant's difficulty with structure and authority over almost the entirety of his school career. Because defendant was a 19-year-old offender, his behavior in school was not too remote in time to be irrelevant to appropriate sentencing considerations, such as his character and rehabilitative potential. As the State points out on appeal, matters related to a defendant's education are encompassed within the required contents of a PSI. 730 ILCS 5/5-3-2(a)(1) (West 2022). A defendant's experiences in school are relevant to the overall picture of his or her history. Moreover, defendant has raised no specific claim, either on appeal or below, that any portion of his school disciplinary report was factually inaccurate.

¶ 56  Defendant cites this court's decision in *People v. Raney*, 2014 IL App (4th) 130551, ¶ 44, for the proposition that "while hearsay evidence is allowable at a sentencing hearing, such evidence should be presented in the form of live testimony, rather than hearsay allegations contained in an attachment to a [PSI]." In *Raney*, a victim impact statement attached to the defendant's PSI recounted alleged misconduct by the defendant that was unrelated to the charged conduct in the case. *Id.* ¶ 45. This court held that "it was error for the statement to be attached to the PSI and considered by the court in the fashion it was." *Id.*

¶ 57  We note that, at sentencing, "hearsay testimony is not *per se* inadmissible *** as unreliable or as denying a defendant's right to confront accusers" and a hearsay objection "goes to the weight and not admissibility" of such evidence. *People v. Foster*, 119 Ill. 2d 69, 98 (1987). Additionally, information in a PSI "must necessarily consist in part of hearsay and other normally inadmissible evidence." *People v. Blanck*, 263 Ill. App. 3d 224, 234 (1994).

¶ 58  Further, in *Walker*, 2023 IL App (4th) 220737-U, ¶¶ 18-29, we explicitly distinguished *Raney* and rejected a similar argument to the one presented by defendant. In doing so, we again emphasized that the defendant had not objected to the PSI before the trial court and that the defendant did not argue the information in the PSI was inaccurate. *Id.* ¶ 29. We further held as follows:

> "In *Raney*, we stated the victim impact statement *should* have been introduced by witness testimony, but we did not go so far as to require witness testimony. [Citation.] In *Hibbler*—which came after *Raney*—we explicitly rejected the argument witness testimony is required to establish reliability of information contained in an unobjected to PSI. [Citation.] More importantly, *Raney* is distinguishable because we found the victim impact statement in *Raney* to be

irrelevant, whereas in the other cases the information in the PSI was found to be relevant. Therefore, it is not evident from the record the trial court relied on an improper sentencing factor." (Emphasis in original.) *Id.* (citing *Raney*, 2014 IL App (4th) 130551, ¶ 44, and *Hibbler*, 2019 IL App (4th) 160897, ¶ 56).

¶ 59    In *Walker*, we also relied heavily on the Third District's decision in *People v. Brock*, 2022 IL App (3d) 200430. In that case, the defendant argued the trial court abused its discretion "by placing significant weight on hearsay evidence in the form of the incident reports attached to [the] defendant's PSI, where no witness testified concerning the contents of the reports." *Id.* ¶ 82. The reviewing court found no question that the contested incident reports were relevant and focused on whether witness testimony was required to establish the reliability of the reports, which came from both the defendant's juvenile detention center and his school district. *Id.* ¶ 84. Although the *Brock* court identified cases where witness testimony had been used to establish the reliability of such reports, it found those cases "did not serve to establish a bright-line rule that incident reports could only be considered reliable if accompanied by witness testimony." *Id.* Further, it found that "procuring witnesses to establish the reliability of similar records at sentencing would place an unnecessary hardship on the prosecution, especially in the absence of any persuasive argument by a defendant as to why the records are unreliable." *Id.* The court further stated as follows:

> "Here, the contested evidence was incorporated into the PSI itself, a report which the sentencing court is mandated to consider. [Citation.] In other words, the fact that the PSI in this case was compiled and offered after an independent investigation by a neutral third party—the probation department—is *prima facie* evidence of the reliability of the information contained therein. Obviously, the court in this case

- 21 -

inherently found the PSI to be reliable by considering its contents." *Id.* ¶ 85.

¶ 60　　　　　We similarly find *Brock* instructive. In this case, defendant's school disciplinary report was attached to his PSI and clearly relevant at sentencing. Before the trial court, defendant affirmatively asserted through counsel that the PSI had "no mistakes," and he has never challenged the factual accuracy of any portion of his school disciplinary report. On these facts, we decline to hold that witness testimony was necessary to establish the report's reliability or depart from our prior holdings in *Dillard* and *Walker*.

¶ 61　　　　　We also find that, on review, defendant overstates the trial court's reliance on the challenged report. Although the court certainly referenced defendant's school disciplinary report and its contents when imposing his sentence, the court's comments do not reflect that the report was overemphasized or even a significant factor in the court's sentencing decision. When the court's comments are viewed as a whole, it is apparent that it placed far greater weight and significance on the nature and circumstances of the offense, defendant's behavior before the court, and defendant's expressed lack of accountability.

¶ 62　　　　　Finally, we further note that in challenging the trial court's consideration of his school disciplinary report based on racial disparities in school discipline, defendant cites reports and articles that he never presented below. The same circumstances arose in *Dillard*, 2025 IL App (4th) 230739, ¶ 166, where "we emphatically reject[ed] any consideration of the materials" that the defendant cited "for the first time on appeal." For the same reasons stated in that case, we do not consider the materials cited by defendant here.

¶ 63　　　　　Under the circumstances presented, defendant cannot show the trial court relied on an improper sentencing factor. As a result, he also cannot show that either his defense counsel or his postplea counsel provided ineffective assistance.

¶ 64                              III. CONCLUSION

¶ 65        For the reasons stated, we affirm the trial court's judgment.

¶ 66        Affirmed.